In the Matter of the Assignment of Cadwell's Bank; Stephen King, Assignee, Appellant; C. N. Wood et al., Appellees.

1. Assignment for Benefit of Creditors: exceptions to report of assignee: jurisdiction. A proceeding to determine the validity of objections to the report of an assignee, under a general assignment, for the benefit of creditors, is one at law.

2. ———: ———: REPORT OF CLAIMS FILED: WHAT ESSENTIAL. Under section 2120 of the Code, requiring assignees for the benefit of creditors, after three months, to file with the clerk of the court a list of all creditors of the assignor who have filed their claims with the assignee, "with a statement of their claims," the assignee must show in his report or by reference to proofs on file, and which are accessible, such facts in regard to the claims filed as will enable any person interested to investigate the claims and reach a conclusion in regard to their validity; and where a report is insufficient in this regard an objecting creditor will not be concluded by his failure to file exceptions thereto within three months after the filing of the report, as required by section 2121 of the Code.

3. ———: ———: ———: PAYMENT OF ILLEGAL CLAIM BY ASSIGNEE: JUSTIFICATION. Where the assignee of a partnership and of the estates of the individual parties, reported the claims filed against the respective estates merely by giving the names of creditors, the amounts of their claims, and the character thereof, and after the expiration of three months the court ordered the "equitable distribution" of the money in the hands of the assignee among the creditors who had proven their claims, *held*, that said order of court was not an adjudication of the validity of the claims filed, and did not justify the payment, in full, of claims filed against the estate of one of the individual partners, but which were in fact claims against the partnership, where it appeared that the funds in the hands of the assignee were insufficient to pay the partnership creditors in full.

4. ———: FILING OF CLAIMS WITH ASSIGNEE: FORM: SUFFICIENCY. An assignee is not required to report a claim filed with him, unless he is furnished by the creditor with such information as he is required to set out in his report.

5. ———: ELECTION OF CREDITOR OF PARTNERSHIP TO LOOK TO ESTATE OF INDIVIDUAL PARTNER. A creditor of an insolvent firm can not by waiving the right to enforce his claim against the partnership assets, receive payment out of the estate of one of the partners to the prejudice of other partnership creditors.

6. ———: ⸢PROCEEDINGS FOR REMOVAL OF ASSIGNEE: RESISTANCE: ATTORNEY FEES. Expenses incurred by an assignee for attorney fees in resisting proceedings for his removal, which were without merit, and which were ultimately dismissed by the court, are payable out of the funds of the estate.

*Appeal from Harrison District Court.*—Hon. George W. Wakefield, Judge.

Wednesday, October 18, 1893.

Stephen King, as assignee of Phineas Cadwell and William C. Cadwell, reported as paid certain claims

made against the individual estate of Phineas Cadwell, and asked the allowance of certain other claims. The appellees filed objections to the report. The assignee filed an answer to the objections, and to that the appellees filed a reply. The issues thus raised were tried by the district court, and a judgment rendered disapproving and disallowing payments the assignee had made, refusing to allow certain claims, and fixing his compensation at an amount less than that he claims. From that judgment he appeals.—*Reversed* in part, and in part *affirmed.*

*S. I. King*, for appellant.

*John A. Berry* and *Thos. Arthur*, for appellees.

Robinson, C. J.—On the ninth day of October, 1888, Phineas Cadwell and William C. Cadwell executed to Stephen King a general assignment for the benefit of their creditors. They had been engaged as co-partners in doing a banking business at Logan, in Harrison county, under the name of Cadwell's Bank, and at Woodbine, in the same county, under the name of Boyer Valley Bank. The assignment included all partnership property, and the individual property of the partners not exempt from execution, and was duly acknowledged and recorded on the day of its date. King qualified as assignee, and on the twenty-ninth day of October, 1888, filed in the proper office an inventory and appraisement of the property transferred to him by the assignment, as follows: Of Phineas Cadwell, eighteen thousand, two hundred and twenty-seven dollars and seventy-one cents; of William C. Cadwell, ninety-five dollars; of Cadwell's Bank, twenty-three thousand, three hundred and fifty-two dollars and ninety-three cents; of Boyer Valley Bank, eleven thousand, six hundred and ninety-three dollars and thirty-nine cents. On the first day of November,

1888, the first publication of the notice of the assignment was made by the assignee. On the fifth day of February, 1889, he filed his report, which included a list of all. persons who had claimed to be creditors of the individual assignors and of the partnership. The claims so made were as follows: Against the partnership to the amount of ˙ seventy-three thousand, four hundred and forty-six dollars and ninety cents; against Phineas Cadwell to the amount of four thousand, three hundred and eighty-nine dollars and thirteen cents; and against William C. Cadwell to the amount of six hundred and seventy-three dollars and four cents. In the list of claims against Phineas Cadwell were one in favor of Stephen King, the assignee, for one thousand, one hundred and fifteen dollars and seven cents, one in favor of C. L. Hyde for one hundred and fifteen dollars, and one in favor of Mrs. J. A. Smith for three hundred and five dollars. The claim of Stephen King was for money he had been compelled to pay as surety on a bond given by the Cadwells to the treasurer of Harrison county to secure the payment of deposits which the treasurer should make in Cadwell's Bank at Logan, and the claims of Hyde and Mrs. Smith were for money deposited in that bank.

On the sixth day of July, 1889, in vacation, one of the judges of the district court of Harrison county made an order addressed to the assignee, as follows: "It is hereby ordered that you make an equitable distribution of the money now in your hands belonging to the above named estate between the creditors thereof who have proved their claims entitling them thereto, as required by law; and it is further ordered that in making the above distribution you, as assignee, are at liberty, and are hereby authorized, to use and dispose of any notes in your possession belonging to said estate, at a sum not less than the face value thereof." The assignee thereupon paid the three claims

specified from funds realized from the separate property of Phineas Cadwell.

In September, 1889, the assignee asked an allowance for his services, and the sum of four hundred dollars was so allowed, not, however, as full compensation for the services rendered. In January, 1890, the assignee renewed his application for an allowance, stating that the reasonable value of his services from the date of the assignment to the first day of September, 1889, was the sum of one thousand, seven hundred and thirty-three dollars and sixty-seven cents.

On the twenty-eighth day of March, 1890, the assignee filed a report, showing that he had incurred an indebtedness to S. I. King in the sum of one hundred and five dollars, and to H. H. Roadifer in the sum of thirty dollars, for services rendered by them as attorneys in a proceeding instituted for the removal of the assignee. On the next day the appellees filed objections to the report, alleging that the payment of the claims of Hyde, Mrs. Smith and Stephen King from the assets of Phineas Cadwell was illegal; that the fees asked to be allowed in favor of S. I. King and Roadifer were not charges against the estate, but should be paid by Stephen King as an individual; and that the charge of the assignee for services is unreasonable, and excessive to the amount of one thousand dollars.

The district court found and adjudged that the claims of Hyde, Mrs. Smith, and Stephen King were in fact claims against the partnership estate of Cadwell's bank; that they had never been filed with the clerk of the district court, and that the report of them so filed only purports to give the amount claimed, name of the claimant, and to state that the claim was against the individual estate of P. Cadwell, without setting forth the facts on which the claim is based; that the order of July 6, 1889, was not an adjudication

of those claims, and did not direct the payment of them; that, at the time the order was made, neither the claim nor the report of the assignee was before the judge who made it. The objection to each of the claims was sustained, and it was ordered that the payment of each out of the estate of P. Cadwell was disapproved and disallowed, and the amount of the claims was charged against the assignee, in favor of the estate of P. Cadwell, but without prejudice to the right of the assignee to present to the court his claim as one for trust funds. The court sustained in part the objections to the claim for compensation made by the assignee, but allowed him one thousand, one hundred dollars in addition to the four hundred dollars theretofore paid, as compensation to January 1, 1891. It also sustained the objection to the fees claimed for Attorneys King and Roadifer on the ground that they were not chargeable against the estate of the Cadwells. It is from these findings, and the rulings and the judgment, that the assignee appeals.

I. There is some contention between the parties to this proceeding in regard to its true character, the appellant claiming that it is in equity, while the appellees contend that it is at law. There is nothing in its nature, nor in the relief demanded, to require the exercise of the equitable jurisdiction of the court, and it will, therefore, be treated as at law.

1. ASSIGNMENT for benefit of creditors: exceptions to report of assignee: jurisdiction.

II. It appears from the reports of the assignee that the Cadwells are insolvent. All claims filed against Phineas Cadwell alone have been paid, but he is liable for the unpaid claims which are just demands against the partnership, and the property in the hands of the assignee is not sufficient to pay them. The appellees are creditors of the partnership, but, since its assets are inadequate to pay the partnership debts, they are interested

2. ——: ——: report of claims filed: what essential.

in the individual assets of each partner, and would be prejudiced by the payment in full therefrom of all the claims which should properly be treated as claims against the partnership, and as entitled to no priority over those of the appellees against the individual property of either partner. Section 2121 of the Code requires the court in cases of this kind to render such judgment "as shall be just." It would certainly be unjust to permit Hyde, King, and Mrs. Smith to be paid in full from the individual assets of Phineas Cadwell, and compel the appellees to accept but a part of their claims, since the claims of all these parties were for liabilities incurred by the partnership.

It is said that the appellees can not be heard to complain of the action of the assignee in paying the three claims specified, for the reason that they did not make timely objection to his doing so. Section 2120 of the Code provides that "at the expiration of three months from the time of first publishing notice, the assignee shall report and file with the clerk of the court, a true and full list, under oath, of all such creditors of the assignor as shall have claimed to be such, with a statement of their claims. * * *" Section 2121 provides that "any persons interested may appear within three months after filing such report, and file with said clerk any exceptions to the claims or demand of any creditor. * * *" It will be noticed that the list of claims in this case was filed with the clerk by the assignee more than a year before the objections of the appellees to their payment were made. The abstract recites that the report filed by the assignee "embraces a true and full list, under oath, of all persons who had claimed to be creditors of the assignors, with a statement of their respective claims;" but it is not shown what the statement contained, and we are compelled to resort to the finding of the court for information in regard to its contents. Sections 2120 and 2121, must

be construed together.   When that is done, it is clear
that the statement filed by the assignee must show such
facts in regard to the claims filed as will enable any
person interested to investigate the claims, and reach a
conclusion in regard to their validity.   It is not enough
to state that a claim for a specified amount has been
filed, but the nature of the claims, and upon what
based, should be shown, either in the report itself or
by reference to proofs on file and accessible to the per-
sons interested, or by other means which will accom-
plish the same purpose.   In this case the statement
filed by the assignee only purported "to give amount,
name of claimant, and that the claims were against the
individual estate of P. Cadwell."   The claims were not
filed with the clerk, and it does not appear that their
character was known to the appellees until they filed
their objections.   It may be that they could have
attacked the report at an earlier date, and compelled a
fuller statement in regard to the claims filed.   Had the
district court found that such was the case, and over-
ruled the objections, because not made in time, we
should not have disturbed its action in that respect.
But a large discretion in settling estates of this kind is
vested in the district courts.   The assignee is "at all
times subject to the order and supervision of the court
or judge" for the purpose of securing "the faithful
execution of the duties required by" the statute.   The
payment in full of the claims in question from the
assets of Phineas Cadwell was grossly unjust to the
appellees and to other creditors of the partnership, and
the act of the assignee in making such payment was
chiefly for his own personal benefit.

III.   It is said that, as no objections were made to
the claims in question within three months from the
time the assignee filed his report showing
a list of the creditors, he had no discretion,
under the order of July 6, 1889, but was
required to pay them.   That order did not

3. ——: ——: ——:
payment of
illegal claim
by assignee:
justification.

purport to be an adjudication of any claim, nor to direct its payment. It merely authorized an "equitable distribution" of the money in the hands of the assignee among the creditors who had proven their claims and were entitled to share in the distribution. The distribution made was not according to the rules of equity. *Smith v. Smith*, 87 Iowa, 93. The assignee is not required to pay an illegal claim merely because no objection to it is made by a creditor. If in doubt in regard to his duty, he could have applied to the court or judge for instructions; but he did not do so, and the district court may well have found that his act in paying the claims was not in good faith, and that it could not be approved.

IV.   It is said the statute does not require a creditor to file his claim with the assignee; that the latter is powerless to obtain a copy of it; and, therefore, that he can not be required to set it out in his report. Whether it is necessary for all claims to be filed with the assignee we need not determine. It is clear that he can not be required to list a claim of which he knows nothing, and that he should be furnished by the creditor with such information, at least, as he is required to set out in his report. A claim can not be said to be exhibited to the assignee within the meaning of the statute, until he shall have had an opportunty to examine it fully, and, if necessary, to obtain a copy of it, and of the proof accompanying it. Moreover, in this case the claims were filed with the assignee, and he was fully informed of their character before he made his report, and before any payment was ordered.

V.   It is insisted that the claim of Stephen King was properly filed against Phineas Cadwell alone, for the reason that the bond under which King's liability arose was executed by the Cadwells as principals, and not by Cadwell's bank. The bond was given for a

partnership purpose, and the liability of the Cadwells to King was for a partnership obligation. The claim was, therefore, against the partnership. The fact that King might have made a demand for the payment of his claim against either partner, and waived it as against the other partner and the partnership, is not important to a determination of the question under consideration; and the same is true of Hyde and Mrs. Smith. They can not prejudice other creditors by making an election of that kind. The proofs of these claims showed upon their face that they were for the partnership liabilities; and nothing in the order of July 6, 1889, nor in the condition of the several estates included in the assignment, required him to pay them in full from the individual assets of Phineas Cadwell.

VI. The facts in regard to the fees claimed by S. I. King and Roadifer appear to be substantially as follows: An application was made to the court for the removal of Stephen King as assignee. It was resisted by him, S. I. King and Roadifer acting as his attorneys, and, after a hearing, was dismissed. There is no suggestion in the record that the assignee acted in bad faith in the matter, nor that the application was well founded; while the action of the court in dismissing it tends to show that it was without merit. The services rendered by the attorneys were worth the amounts claimed. Since the services were rendered to defend the right acquired by the assignee through the assignment, from an unwarranted attack made without fault on his part, we think the compensation therefor should be allowed from the fund in his hands as expenses incurred in protecting the interests of the estate. 2 Perry on Trusts, section 910; Burrill on Assignment, section 417.

VII. Complaint is made of the compensation allowed to the assignee. In regard to that it is only

6. ——: proceedings for removal of assignee: resistance: attorney fees.

necessary to say that the evidence tends to show that the allowance made was ample for the services rendered.

The conclusions announced dispose of all material questions presented for our determination. The matters in controversy are so distinct and separated that our judgment will be final as to so much of the action of the district court as is affirmed. Two thirds of the cost of the appeal will be taxed to the appellant, and one third to the appellee. The judgment of the district court in disallowing the charges of S. I. King and H. H. Roadifer as claimed against the estate of the Cadwells is REVERSED; in all other respects it is AFFIRMED.