Eileen CONWAY, Petitioner and Appellant,

v.

Lorraine PARKER et al., Respondents and Appellees.

Civ. No. 9243.

Supreme Court of North Dakota.

Jan. 27, 1977.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for petitioner and appellant;

Armond G. Erickson, Fargo, moved that Terence Doyle of Briggs & Morgan, St. Paul, Minn., be permitted to appear and argue the case, which motion was granted.

Pearson & Christensen, Grand Forks, for respondents and appellees; argued by Garry Pearson, Grand Forks.

SAND, Justice.

Eileen Conway, one of two personal representatives for the estate of Selma Kjorvestad, appeals from an order of the district court of Nelson County which affirmed the judgment of the Nelson County probate court and authorized an additional amount for partial distribution.

Three issues are presented on this appeal:

(1) Was the district court's order requiring the joint personal representatives to execute a power of attorney to an accounting firm, E. W. Brady & Co., Ltd., to represent the estates of Guy Kjorvestad and Selma Kjorvestad before the Internal Revenue Service clearly erroneous?

(2) Was Lorraine Parker, as joint personal representative, entitled to reimbursement from the estate for attorney's fees paid to an attorney hired by her but without the consent of the other personal representative, Eileen Conway?

(3) Was the district court in error in ordering partial distribution of $35,000 from the estate to each personal representative?

The personal representatives, Eileen Conway and Lorraine Parker, are the surviving daughters of Guy and Selma Kjorvestad. Guy Kjorvestad died on January 27, 1973, leaving his wife and two daughters, a son having predeceased him. All property was left, by the effective provisions of his will, to his wife. He also appointed his wife as executrix if she survived him; and if she did not, his daughter Eileen Conway. His wife Selma refused to act and requested that both daughters be appointed. On March 15, 1973, the will was admitted to probate and Eileen and Lorraine were appointed by the court as coexecutrixes.

On October 1, 1973, Selma executed an instrument disclaiming all her real estate inheritance from the estate of Guy Kjorvestad. On January 7, 1974, she executed a codicil to her will, which will was dated December 3, 1972. Selma died on May 15, 1974, leaving her property, if her husband did not survive her, to her two daughters, share and share alike, and appointing them coexecutrixes of her estate. Selma's will was admitted to probate in April of 1975.

In early 1975 a petition for accounting in the estate of Guy Kjorvestad was filed by Eileen Conway. The petition was granted and an accounting was filed by Lorraine Parker in April of 1975.

Lorraine Parker, by her attorney, Garry Pearson, filed a petition in probate court on August 12, 1975, requesting relief on nine different counts. Those material to this appeal were: (1) a request that power of attorney be given to the E. W. Brady & Co., Ltd., to represent both estates before the Internal Revenue Service and in particular to obtain any necessary extensions of time in order to file the income and estate tax returns; (2) request for an order directing payment of all attorney's fees for attorneys acting for the estate or the coexecutrixes; and (3) a request for approval of partial distribution from the Selma Kjorvestad estate of $35,000 each to Eileen Conway and Lorraine Parker.

The probate court, by order dated September 19, 1975, granted relief on counts (1) and (2) listed above, but reserved ruling on the issue of partial distribution, count (3), pending receipt of a report from E. W. Brady & Co., Ltd. (hereinafter Brady & Co.). In addition, the court granted the request of Terence Devine, who had earlier been appointed by the court, to withdraw as counsel for the estate of Selma Kjorvestad. No one was appointed by the court to replace Devine as estate attorney. After the Brady & Co. report was received, another order was entered by the probate court on October 14, 1975, authorizing partial distribution in the amount of $35,000 to Lorraine Parker only.

Eileen Conway appealed to the district court from certain sections of the September 19th order and from the October order. The district court found that there was a good and sufficient reason to order the personal representatives to delegate a power of attorney to Brady & Co.; that services performed by attorney Garry Pearson were to the benefit of the estates of Guy and Selma Kjorvestad and were reasonable in amount; and that the estate of Selma Kjorvestad had sufficient assets to allow a partial distribution of $35,000 each to Lorraine Parker and Eileen Conway.

Eileen Conway appealed to this court from the judgment of the district court. We are primarily concerned on this appeal with the probate of Selma Kjorvestad's estate, although by the terms of the wills involved her estate and that of her husband are interrelated.

The written and oral arguments on appeal before this court left the impression that the district judge on appeal merely took judicial notice of the contents of the file of the probate court; whereas the transcript discloses that the trial court had offered to take judicial notice of the facts in the file to shorten the hearing, but after an objection was lodged, evidence was introduced on the different issues, and the court specified the items of which it was taking judicial notice.

## POWER OF ATTORNEY

Eileen Conway asserts in this appeal that the district court improperly compelled her as joint personal representative to execute a power of attorney to Brady & Co. She claims the court gave no reason for the order, and in addition had no power to command her to exercise a discretionary power.

■ Personal representatives are not required to perform every act which may be necessary or proper in the administration of an estate, and may employ agents to perform tasks which they cannot reasonably be expected to perform personally. 33 C.J.S. *Executors and Administrators* § 146. Our statutes incorporate this view in § 30.1–18–

15(21), North Dakota Century Code, which provides:

"Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to the priorities stated in section 30.1–20–02, a personal representative, acting reasonably for the benefit of the interested persons, may properly:

. . . . .

"21. Employ persons, including attorneys, auditors, investment advisers, or agents, even if they are associated with the personal representative, to advise or assist the personal representative in the performance of his administrative duties, and act, without independent investigation, upon their recommendations. Instead of acting personally, he may employ one or more agents to perform any act of administration, whether or not discretionary."

It is clear that Brady & Co., a firm of certified public accountants, would come within this provision as agents or auditors employed to assist in performance of administrative duties for the Kjorvestad estates. The purpose of the power of attorney given by the estate was to enable Brady & Co. to represent both estates before the Internal Revenue Service and to obtain any necessary extensions of time for filing of estate and income tax returns.

The problem arises because two personal representatives were appointed for the Kjorvestad estate, rather than one. From Conway's point of view, the order compelled her to perform an act she didn't wish to perform. From Parker's viewpoint the order was not a command, because it was she who requested that the power be executed to Brady & Co. Her request was based in part on the fact that a year earlier the estate had been faced with, and successfully resisted, a late filing penalty of $7,000 for late filing of a return on the Guy Kjorvestad estate. Parker was therefore attempting to ensure that all tax returns remaining would be timely prepared and filed.

The result was a direct conflict between the two personal representatives. In order to determine whether the district court was authorized to issue its order in spite of this conflict, we look to two statutory provisions. Section 30.1–18–17, NDCC, sets out the requirements for joint action in the case of corepresentatives:

"If two or more persons are appointed co-representatives and unless the will provides otherwise, the concurrence of all is required on all acts connected with the administration and distribution of the estate. This restriction does not apply when any co-representative receives and receipts for property due the estate, when the concurrence of all cannot readily be obtained in the time reasonably available for emergency action necessary to preserve the estate, or when a co-representative has been delegated to act for the others. Persons dealing with a co-representative if actually unaware that another has been appointed to serve with him or if advised by the personal representative with whom they deal that he has authority to act alone for any of the reasons mentioned herein, are as fully protected as if the person with whom they dealt had been the sole personal representative."

■ The statute clearly requires joint action by corepresentatives whenever circumstances permit.[1] Such joint action was not present or forthcoming from Parker and Conway. The district court was confronted with the question of what, if any, alternatives were available aside from continued impasse.

■ Some control over the actions of personal representatives is permitted by § 30.-1–17–07, NDCC, which provides:

"1. On petition of any person who appears to have an interest in the estate, the court, by temporary order, may restrain a personal representative from performing specified acts of administration, disbursement, or distribution, or exercise of any powers or discharge of any duties

---

1. Unfortunately, this section does not provide what remedy is available upon an impasse.

of his office, or make any other order to secure proper performance of his duty, if it appears to the court that the personal representative otherwise may take some action which would jeopardize unreasonably the interest of the applicant or of some other interested person. Persons with whom the personal representative may transact business may be made parties.

"2. The matter shall be set for hearing within ten days unless the parties otherwise agree. Notice, as the court directs, shall be given to the personal representative and his attorney of record, if any, and to any other parties named defendant in the petition."

The pertinent portion of that statute allows the court to "make any other order to secure proper performance of his [the personal representative's] duty" if it appears that some person's interest in the estate may be jeopardized. This section should be read in conjunction with § 30.1–18–03(1), NDCC, which states, in part:

". . . A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this title, and *as expeditiously and efficiently as is consistent with the best interests of the estate.*" [Emphasis ours.]

We hold that the district court was authorized to and, properly, did require that a power of attorney be executed to Brady & Co., notwithstanding lack of concurrence on this issue by the corepresentatives. Although joint action is the goal of the Uniform Probate Code, as evidenced by § 30.1–18–17, NDCC, set out previously, failure of the representatives to agree cannot be allowed to result in stalemate of administration of the estate.

It was clear to all parties that tax matters had to be dealt with in order for the estate to proceed to settlement. Parker and Conway, the corepresentatives, were not equipped, nor did they offer, to prepare tax returns for the two estates. Subsequent to Mr. Devine's withdrawal as counsel for the estate in probate court, there was no estate attorney authorized or appointed to prepare the returns. Evidence before the district court was sufficient to allow it to find that the order was necessary for expeditious and efficient settlement of the estate and to prevent jeopardizing the interest of concerned parties.

The only two parties in interest here are Parker and Conway, who will share equally as beneficiaries of the entire estate. Parker's interest in the estate might have been reduced by late filing penalties, and the prospect of estate administration being slowed down unnecessarily was also present. The district court's order merely required Conway to proceed in a matter essential to expeditious handling of the estate. The power of attorney was to be executed to Brady & Co. for the limited purpose of representing the Kjorvestad estates before the IRS, hence it was not an undue infringement on Conway's powers as personal representative.

## ATTORNEY'S FEES

The district court approved bills for legal services submitted by Garry Pearson and ordered payment of those services to be made from the estate. Conway argues that the court's approval was incorrect as a matter of law inasmuch as Pearson was employed by Parker in her individual capacity and not on behalf of the estate. In the alternative Conway alleges that the legal fees were not shown to be reasonable in amount.

Evidence in district court showed that the corepresentatives originally hired an estate lawyer, a relative, who drew the wills for Guy and Selma Kjorvestad, but then withdrew a short time later. Aside from this and the appointment of and subsequent withdrawal of Mr. Devine, the representatives have had separate counsel. Pearson testified that he represented Parker from the beginning and handled numerous estate matters, including defense of a renter's suit brought against the estate in which the main claim was dismissed and the remainder ultimately settled. For a short time he

represented Conway as well, but billed her separately for those services. The bills presented to the district court for approval were, according to Pearson's testimony, limited solely to work done for the estate. Pearson has continued to represent Parker and is her attorney on this appeal.

The rule is well settled that personal representatives may employ attorneys to advise and assist in the conduct of probate matters and that an attorney is entitled to collect a reasonable fee for such services. *In re Berzel's Estate*, 101 N.W.2d 557 (N.D.1960). A representative who pays out money for attorney's fees incurred in the care, management, and settlement of the estate is entitled to be reimbursed from the estate, and this includes attorney's fees for expenses of any necessary litigation. 31 Am.Jur.2d Executors and Administrators §§ 531, 534. The personal representative may employ and pay counsel in his personal capacity, then request reimbursement from the trust. Also, subject to approval of the probate court, payment may be made directly to the attorney out of the estate. See, *Wilkinson v. McCall*, 247 Ala. 225, 23 So.2d 577 (1945). See also, 31 Am.Jur. *Executors and Administrators* § 169, page 237.

The employment of independent counsel when more than one personal representative is involved brings into play some additional considerations. A representative may, of course, individually employ counsel at any time if he does so at his own expense. Conway correctly points out, however, that some courts have held a personal representative may not individually employ counsel to represent and advise him with respect to administration of the estate without the consent and approval of corepresentatives and without order or approval of the court, and charge the cost of such employment against the estate. See, *Galt v. Davis*, 56 App.D.C. 53, 8 F.2d 1012 (1925).

But we think the better rule is that the question of whether a cofiduciary has authority to employ independent legal counsel at the expense of the estate depends ultimately on the facts and circumstances of the individual case. 66 A.L.R.2d 1169,

§ 2. Where corepresentatives are named, clearly, cooperation between them is contemplated and a multiplicity of attorneys is not to be encouraged. Indeed, employment of additional attorneys by individual executors should be regarded with disfavor. But the attorney-client relationship is a very personal one, and because a personal representative is a fiduciary, it is essential that he have the selection of the attorney who is to assist him in the performance of duties imposed on him by law. *In re Lachmund's Estate,* 179 Or. 420, 170 P.2d 748 (1946). This principle was apparent in *In re Fraser,* 165 App.Div. 441, 150 N.Y.S. 774 (1914), where the court allowed the appellant, who was one of three executors for the estate, to be reimbursed by the estate for an attorney hired by him in addition to a law firm already conducting estate matters. That case involved opposition to probate of the will, and the appellant hired his own attorney when he became dissatisfied with the way the contest was being conducted. The court said:

> "The multiplication of attorneys is, of course, to be deprecated, and the better course undoubtedly is that all of the executors shall be represented by the same attorneys. But, when several persons have been named as executors, a certain degree of personal and individual responsibility rests upon each of them as to the manner in which any opposition to the probate of the will shall be met, and when one executor is honestly, not capriciously, dissatisfied with the method of defense adopted by the original attorney for the executors, we are not prepared to say that he may not employ an additional and independent attorney. Whether or not he shall be allowed the expense incurred in so doing must depend in each case upon his good faith, the reasonableness of his acts, and the benefits accruing to the estate therefrom."

Among the factors that might lead a court to allow such fees to be charged against the estate would be a showing that the cofiduciary secured court permission before employing independent counsel; a

showing that the sum of fees allowed various attorneys employed separately does not exceed an amount which would be reasonable if only one attorney had represented the estate; a showing that the estate was being improperly administered and that the employment was necessary for protection of the estate; or a showing that the services rendered by counsel separately employed were for the benefit of the estate as a whole. 66 A.L.R. 1169, §§ 3, 6, 8. See also, *In re Greenberg's Estate,* 15 Ill.App.2d 414, 146 N.E.2d 404 (1957).

In the instant case there has been some confusion about who, if anyone, was the attorney for the estate at any given time. At the time of the hearing in probate court no person was acting in that capacity by court appointment. This factor alone strongly indicates that Pearson's employment was necessary in order to protect the estate. Without some attorney employed to carry on with probate matters, the estate might have faced improper administration or complete lack of administration. Because there was no official estate lawyer, we think there was some mitigation of the factors which lead courts to disfavor employment of separate counsel. Parker's employment of Pearson did not create a conflict or competition with attorneys already handling the estate, because there were none. The situation which existed was merely additional justification for Pearson's employment.

■ Conway's major objection seems to be that Pearson was not hired by both representatives. The crucial factor, however, is whether the services of the attorney were to the common benefit of the estate; not by whom he was employed. If the services rendered by counsel separately employed were a benefit to the estate as a whole, his legal fees are usually justified as a charge against the estate. 31 Am.Jur.2d *Executors and Administrators* § 536. In *Wilkinson v. McCall, supra,* one of two co-executors objected to the court's allowance of attorney's fees for counsel employed by the other coexecutor. The court upheld payment of fees out of the estate on the basis that services were rendered in connection with the sole assets of the estate and were of common interest to the parties interested in the estate. That Pearson's preparation of a report and accounting in the estate of Guy Kjorvestad, his work on numerous tax matters, and in particular his defense of the estate in the trial of the renter's claim, benefited the estate cannot seriously be disputed. Conway, who benefited from these services, cannot now object to payment for those services out of the estate.

■ Although the reasonableness of the attorney's fee is made an issue on this appeal, we do not think a serious challenge was made on that point. The determination of what are reasonable fees is largely in the discretion of the trial court. 31 Am.Jur.2d *Executors and Administrators* § 535; *Ex parte Robinson,* 196 S.C. 186, 12 S.E.2d 701 (1940). The amount of the fee depends upon the nature and extent of services rendered, the amount of the estate, the time required, and the ability, skill and experience of the attorney. *In re Berzel's Estate, supra.*

■ Total bills for Pearson's services in both Guy and Selma Kjorvestad's estates were received into evidence in district court, and foundation for the statements was waived by counsel for Conway. In addition, Pearson testified as to his method of computing charges, and the time period within which his work for the estates was performed. No serious objection was made that the fees charged were unreasonable. The overriding contention simply was that Pearson did not supply enough detailed information. We find that the evidence was sufficient to support the district court's finding of reasonableness, and affirm the court's holding on both allowance and amount of attorney's fees.

## PARTIAL DISTRIBUTION

In the original petition to probate court, partial distribution of $35,000 was requested for each of the corepresentatives, Conway and Parker. The probate court, in its

order dated October 14, 1975, allowed the partial distribution for Parker only. The district court, however, followed the original petition and granted $35,000 apiece to Conway and Parker.

The application for partial distribution was made because the apartment house in which Lorraine Parker lived was sold and converted into condominiums, which were then offered for sale to the former tenants. Parker did not have the $35,000 needed for the purchase, and looked to the estate, as one of the intended beneficiaries, for payment of that amount. The district court apparently allowed the amount to both parties in order to keep distribution to them on an equal basis.

On this issue, particularly strong objection was made on appeal to the procedure used in district court. The district court, Conway argues, did not meet the requirement of § 30–26–23, NDCC, for a trial anew of all issues. That statute provides, in part:

> "If an appeal from a decree or an order of a county court is taken generally, all the issues must be tried and determined anew in the district court and the court must hear the allegations and proofs of the parties and determine all questions of law and fact arising thereon according to the mode of trying similar issues originating in that court, except that an issue involved in the probate of a will and issues arising upon a petition for the allowance of a claim or demand for money only must be tried according to the mode of trying issues to a jury if a jury is demanded."

■ The meaning of the statute is clear on the necessity of trial anew on an appeal to district court from county court. Where the appeal is taken generally, *all* issues must be tried and determined anew in district court. In *In re Estate of Bjerke,* 148 N.W.2d 575 (N.D.1967), an appeal to district court was dismissed because no evidence was offered except the records of the county court. We held the dismissal of the appeal was proper because the district court had nothing before it on which to act, and that § 30–26–23, NDCC, requires that the

district court render its decision on the basis of evidence submitted to it, rather than on the record made in the lower court. Again, in *Hoppin v. Fortin,* 111 N.W.2d 122 (N.D. 1961), we held that on general appeal from county court to district court involving issues of law and fact, the issues are triable on evidence offered anew and not on the record or transcript of the testimony and proceedings in county court. See also, *In re Peterson's Estate,* 22 N.D. 480, 134 N.W. 751 (1912).

■ Conway points to portions of the district court transcript to show that the court did take judicial notice of the file from probate court and was prepared to render a decision based on the file alone. Early in the proceedings the court did offer to take judicial notice of the file and indicated it thought the estate was substantial enough to allow for the partial distribution. The transcript indicates that by taking judicial notice of the record in probate court and suggesting that the parties stipulate to that, and possibly to other facts, the court's intention was to satisfy the trial anew requirement without endless hours of testimony. If the transcript had ended there the appellant's argument might have some validity. But a reading of the transcript shows without question that after a discussion of the trial anew requirement the parties introduced, and the court received, evidence on all issues sufficient to support the findings made by the court.

Evidence presented in district court included the Brady & Co. report, consisting of a statement of cash assets of both estates as of April 30, 1975; testimony of the accountant who prepared the Brady & Co. report as to its accuracy; copies of federal and state tax returns in the Selma Kjorvestad estate; and testimony by Lorraine Parker on the bank account balance for the estate, estimated expenses paid from the estate since April of 1975, and estimated value of the 1975 crop.

Counsel for Conway argued that this was insufficient evidence and that Parker, as petitioner, did not carry the burden of proof, particularly with respect to the Bra-

dy & Co. report. The report was objected to, among other reasons, because it was merely an accounting of all cash items rather than a complete financial statement, including all potential liabilities against the estate. In addition, it did not distinguish between the two estates, but represented a cash accounting of both estates together.

We agree that the burden of proof was on Parker, inasmuch as she was the original petitioner in probate court and the burden of proof remains on the petitioner when appeal to the district court results in a trial anew. But we disagree with Conway that the burden of proof requires the equivalent of a full accounting. The trial court, in allowing partial distribution, applied § 30–21–03, NDCC, a former provision which was in force prior to the July 1, 1975, effective date of the Uniform Probate Code. The applicable portion of § 30–21–03, NDCC, provides:

"If at a hearing upon a petition for the payment of a legacy or share of an estate, it appears that the share of the party applying may be allowed to him without loss to the creditors of the estate, the court must make an order in conformity with the prayer of the applicant, requiring:

"1. Each heir, legatee, or devisee obtaining such order, before receiving his share or any portion thereof, to execute and deliver to the executor or administrator a bond in such sum as shall be designated by the county judge, with sureties to be approved by the judge, payable to the executor or administrator, and conditioned for the payment, whenever required, of his proportion of the debts due from the estate, not exceeding the value or amount of the legacy or portion of the estate to which he is entitled;

"2. The executor or administrator to deliver to the heir, legatee, or devisee the whole portion of the estate to which he may be entitled, or only a part thereof, designating it."

 Although this proceeding was commenced on August 11, 1975, after the effective date of the Uniform Probate Code, we find that the trial court's application of former law to be consistent with the Uniform Probate Code provisions, particularly § 30.1–35–01, NDCC, which says in part:

"b. The title applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of the decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this title."

Application of former law was in the discretion of the trial court and we do not find an abuse of that discretion, especially in light of the fact that both wills were admitted to probate prior to July 1, 1975.

 It is to be noted that the statute invoked by the district court does *not* require a complete and final accounting to be made before partial distribution may be made. Rather, such distribution is allowed if ". . . it appears that the share of the party applying may be allowed to him without loss to the creditors of the estate . . . ." If, as appellant suggests, the petitioner was required to present a full accounting of all assets, expenditures, and potential liabilities and debts, the purpose of partial distribution would be defeated. The mechanism was available under prior law to allow some portion of the estate to be delivered to an heir entitled to it without waiting for final settlement and closing of the estate.

The evidence presented in district court showed the estates to be substantial. The cash assets were more than sufficient to allow for a $35,000 distribution to each representative, even if liabilities were as great as projected by the appellant. In addition, the corepresentatives are the only beneficiaries to the estates, and because distribution to each of them was authorized, it cannot be said that any interested parties will be threatened. The bond requirement of § 30–21–03, NDCC, lessens this danger even more, to the point where any concerns

about harm to the estate's creditors or beneficiaries should be alleviated.

Conway testified as to her doubts about the wisdom of her sister's spending habits, but we think that kind of consideration was beyond the court's duties in a probate proceeding. Personal representatives may exercise considerable discretion in handling estate matters. As trustees, they must act prudently, diligently, and in good faith, but they are not required to use only the best financial strategy possible. The court, on application for partial distribution, must be satisfied that it can be made without harm to creditors, but it need not supervise the parties once distribution is made to see that the funds are used prudently or from the most advantageous business viewpoint.

The Brady & Co. report and testimony of Parker as to the cash balance in the estate were both objected to in district court on evidentiary grounds. The Brady & Co. report was objected to as being improperly authenticated. It was prepared by an accountant who appeared and testified in district court as to its truth, authenticity, and accuracy, even though the report was signed by a senior partner in the firm in keeping with the Brady & Co. practice. Conway argued that the senior partner should have testified and was available. However, we find no error in the court's admission of the report. The Rule of Evidence, Rule 901, adopted to be effective February 15, 1977, is instructive on this point, and provides that:

"(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

The rule cites as one method of authentication the

"Testimony [of a witness with knowledge] that a matter is what it is claimed to be."

The testimony of the accountant who prepared the report certainly satisfies this requirement.

The testimony of Parker as to the bank balance of the estate was likewise properly admitted over Conway's objection that it was not the best evidence. As the Minnesota Supreme Court explained in *Buffalo Insurance Co. v. United Parking Stations, Inc.*, 277 Minn. 134, 152 N.W.2d 81 (1967), the best evidence rule means only that the contents of a writing must be proved by the writing itself if available. It does not mean that the party must produce the most trustworthy and credible evidence. Here, the contents of a writing were not in issue. The petitioner was attempting only to show availability of cash assets of the estate, and although Parker's testimony may not have been the most conclusive evidence, that merely affects the weight of her testimony, not its admissibility.

Based on our review of the transcript, the district court did not abuse its discretion in allowance of partial distribution. We affirm $35,000 distribution as to each representative, and also affirm the district court's award of attorney's fees to Pearson and its order regarding power of attorney. Its order and judgment are consistent with the goal of conducting probate matters as expeditiously as possible. While it is regrettable that the corepresentatives here have not achieved the level of cooperation envisioned by the Uniform Probate Code, the tactics used should not be permitted to interfere with efficient probate. Conceivably, one corepresentative could withhold consent or refuse to act on all discretionary matters and could thereby successfully checkmate and completely neutralize the powers of the other except for those duties made mandatory in probate proceedings, resulting in a detriment, if not ruin, to both. We do not think such a Mexican standoff is advisable or legally justified and the law should discourage them and not lend dignity or support to them if one of the corepresentatives has applied to the courts for relief.

The judgment of the district court is hereby affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.