**In the Matter of the Estates of Guy KJORVESTAD, Sr., and Selma Kjorvestad, Deceased.**

**Eileen CONWAY, Petitioner and Appellant,**

**v.**

**Lorraine PARKER, Nels Kjorvestad, and Lief Kjorvestad, Respondents and Appellees.**

**Civ. No. 9243–A.**

Supreme Court of North Dakota.

Jan. 10, 1980.

Caldis & Arneson, Ltd., Grand Forks, for petitioner and appellant; argued by Gordon Caldis, Grand Forks.

Pearson & Christensen, Chartered, Grand Forks, for respondents and appellees; argued by Garry A. Pearson, Grand Forks.

PAULSON, Justice.

This is an appeal from a judgment of the Nelson County district court, affirming an order of the Nelson County probate court. The question presented for review is essentially whether or not the fees charged by Attorney Garry A. Pearson ["Pearson"] for legal services rendered from January 16, 1976, through July 26, 1977, in the Estate of Guy Kjorvestad, Sr., and the Estate of Selma Kjorvestad were reasonable. We conclude that the fees charged were reasonable; therefore, we affirm.

Petitioner and appellant Eileen Conway ["Conway"] raises several issues on this appeal. These issues are as follows:

(1) Whether or not Pearson's services were performed as personal attorney for respondent and appellee Lorraine Parker ["Parker"] and not as attorney for the estates;

(2) Whether or not Pearson's services were for the common benefit of the Estates of Guy Kjorvestad, Sr., and Selma Kjorvestad; and

(3) Whether or not Pearson's fees have been proved reasonable.

The pertinent facts of the case are as follows: Guy Kjorvestad, Sr., died on January 27, 1973, leaving his wife, Selma, and their two daughters, Eileen Conway and Lorraine Parker; a son, Guy, Jr., having predeceased Guy, Sr. In the effective provisions of his will, Guy, Sr., left all of his property to his wife, Selma. He appointed Selma executrix if she survived him, and appointed Conway executrix in the event that Selma did not survive him. Selma refused to act as executrix and requested that both Conway and Parker be appointed as coexecutrixes.[1] The Guy, Sr., will was

admitted to probate on March 15, 1973, and the court appointed Conway and Parker as coexecutrixes.

Selma Kjorvestad died on May 15, 1974, leaving her property to her two daughters, share and share alike, and appointing them as coexecutrixes of her estate. Previously, on October 1, 1973, Selma had executed an instrument disclaiming all of her real estate inheritance from the Estate of Guy Kjorvestad, Sr. The questions presented on this appeal relate to matters stemming from both the Estate of Selma Kjorvestad and the Estate of Guy Kjorvestad, Sr. Similar questions were presented to this court in an earlier case involving the same estates and parties, and reference to that earlier opinion is enlightening. *Conway v. Parker,* 250 N.W.2d 266 (N.D.1977). In fact, these parties have been disputing settlement of these estates for so long that the protracted nature of this litigation is similar to that in *City of Wahpeton v. Drake-Henne, Inc.,* 228 N.W.2d 324 (N.D.1975).[2]

At issue are fees of $15,238.57 charged by Pearson for services rendered in the estates between January 16, 1976, and July 26, 1977. Pearson submitted a bill of $4,464.61 for services rendered in the estate of Guy, Sr.; and a bill of $10,773.96 for services rendered in Selma's estate. The district court found that examination of Pearson's time records indicated that Pearson had rendered $16,843.85 worth of services in the two estates and had actually charged $1,605.28 less than the amount his time records showed. The district court found that work performed by Pearson was "beneficial to the estates as a whole and necessary for protection of the estates", and that the fees charged were "not excessive nor unreasonable". The district court

1. The designation "coexecutrixes" in this context is a misnomer; the proper designation should have been "coadministratrixes with the will annexed", but we have used the designation "coexecutrixes" which has been used throughout these proceedings.

2. In *City of Wahpeton, supra* 228 N.W.2d at 330–331, this court adopted the following:

"The Fifth Circuit, in *Bros Incorporated v. W. E. Grace Manufacturing Co., supra,* 320 F.2d

594, at 597–598, quotes Justice Story, in *Ocean Ins. Co. v. Fields,* 18 Fed.Cas. pp. 532, 539 (C.C.D.Mass.1841): ' "It is for the public interest and policy to make an end to litigation * * *" so that "* * * suits may not be immortal, while men are mortal." ' As Judge Heen wrote in his memorandum of opinion of October 22, 1974, '. . . there should be at some point an end to litigation, . . .' Let this be it."

468

found no impropriety or wrongdoing on the part of either Pearson or Parker, but did find that there had been "less than full cooperation" from Conway in connection with the probate proceedings. The district court found that the estates are in a position to pay all debts arising under them. The above-mentioned findings of the district court cannot be overturned on appeal unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973).

■ Conway argues that Pearson's services were rendered as personal attorney for Parker, and not as attorney for the estates. Conway asserts that the appointment of Parker as coexecutrix was improper because of § 56–02–11 of the North Dakota Century Code, which was in effect at the time of the appointment of Parker as coexecutrix [§ 56–02–11, N.D.C.C., has subsequently been repealed]. Section 56–02–11, N.D.C.C., provided that authority for one executor to appoint another executor would be void. Reference to § 56–02–11, N.D.C.C., is without merit, however, because in the instant case the *court* appointed Parker coexecutrix. The decision to appoint Parker coexecutrix of the Guy, Sr., estate was made on March 15, 1973, and has not been appealed from. It would be improper to allow Conway to raise this issue collaterally at this juncture, especially where the case has already been appealed to this court previously and Conway has acquiesced in her position as coexecutrix throughout the proceedings.

■ The question of whether or not Pearson represented Parker individually has already been decided by this court. In an earlier case, *Conway v. Parker*, 250 N.W.2d 266 (N.D.1977), we held that, where there are two personal representatives, "failure of the representatives to agree cannot be allowed to result in stalemate of administration of the estate". *Conway, supra* 250 N.W.2d at 272. In that earlier *Conway* case, we found that "Pearson's employment was necessary in order to protect the estate". *Conway, supra* 250 N.W.2d at 274. As we there said, in *Conway, supra* 250 N.W.2d at 274:

"The crucial factor, however, is whether the services of the attorney were to the common benefit of the estate; *not by whom he was employed.*" [Emphasis added.]

Since this issue was clearly answered by this court in its earlier *Conway* opinion, we will not discuss it further here.

■ The second issue raised by Conway is whether or not Pearson's services were rendered for the common benefit of the estates. Conway raises several points in support of her position that Pearson's services were not rendered for the common benefit of the estates. The general rule regarding services of separate counsel is set out at 66 A.L.R.2d 1175, § 6. That rule is as follows:

"The fact that services rendered by counsel separately employed by one cofiduciary were for the benefit of the estate as a whole tends to justify charging the fees of such attorney against the estate."

About one-half of the fees in question (or $7,091.54) consisted of the costs of prosecuting the earlier appeal to this court. Suffice it to note that it was Conway who brought that appeal and she cannot now come before this court and complain of costs which could have been avoided if she were of a less litigious nature. The district court did not commit error in finding those costs reasonable and incurred for the common benefit of the estates.

■ Conway also takes exception to the trial court's allowance of the cost of removal proceedings brought by Pearson against her and charged to the estates. Pearson has billed $3,495.96 for services related to this removal attempt. We might be inclined to agree with Conway if such a removal attempt was made in bad faith, but a review of the record indicates otherwise. Conway's intransigence has continuously frustrated amicable settlement of these estates. A review of the record indicates that Conway has employed, directly or indirectly, at least seven attorneys since probate of these estates was commenced; that she brought disciplinary charges against Pear-

son, which were found insufficient; and that she has resisted virtually every attempt to bring about an early resolution of the settlement of these estates. We find that Pearson's attempt to remove Conway as coexecutrix was made in good faith and for the common benefit of the estates. Therefore, we find that it was not error for the trial court to allow this charge against the estates.

■ Conway asserts that the trial court committed error in allowing Pearson to charge the Kjorvestad estates for his defense before the North Dakota Grievance Committee to charges brought against him by Conway. The question of whether these fees were incurred for the common benefit of the estates is a difficult one. We find, however, that where charges of unethical conduct are brought against an attorney by an uncooperative coexecutrix and said charges are found insufficient to justify disciplinary action, it is not error for the trial court to allow these costs to be charged against the estates out of which the necessity for defense in a disciplinary proceeding arose.

We find persuasive the reasoning in the somewhat analogous case of *Cromer v. Cromer*, 222 Ga. 365, 149 S.E.2d 804, 807 (1966), a case where charges of fraud were brought against the administrators of an estate. The Georgia Court found that attorneys fees in defending against such charges of fraud were rendered in favor of the estate. The *Cromer* Court, *supra* 149 S.E.2d at 807, said:

> "While fraud or misconduct on the part of an administrator giving rise to a suit against him by an heir would not authorize a charge against the estate for attorneys fees to defend the suit . . . where no fraud or misconduct is proved, as here, the administrator should be allowed a reasonable amount from the estate to retain counsel in defending the unfounded charges."

The reasoning in *Cromer* is persuasive for many reasons. In the instant case, although the charges were brought against the attorney and not against the adminis-

trator, the charges stemmed from services rendered in connection with the estates and the necessity for defending against the charges would not have arisen but for Pearson's efforts on behalf of the estates. Therefore, since Pearson's services were rendered for the benefit of the estates, his defense against unfounded grievance charges was a cost incident to the common benefit of the estates.

■ Also persuasive is the case of *Willson v. Whitehead*, 181 Va. 960, 27 S.E.2d 213 (1943), where the Virginia Court held that a trustee could recover his expenses where he is subjected to an unwarranted and groundless attack. In *Willson*, the attack was an unfounded removal attempt and the court allowed the trustee to recover the costs from the estate of defending himself in the removal suit. However, in *Clare v. Grasty*, 213 Va. 165, 191 S.E.2d 184 (1972), the Court found that it was error to charge the estate for attorney fees which resulted from an attempt to remove a coexecutor where the removal suits were not groundless. The reasoning of the Virginia Court seems to turn on the question of the good faith or bad faith of the person bringing the charges. If charges are brought against an executor in good faith and are well grounded, then the executor should *not* be able to recover the cost of his defense from the estate. Conversely, if charges are brought against the executor in bad faith and are groundless, the executor *should* be able to recover the cost of his expenses from the estate in defending against these charges. We believe that the same rule should apply when charges are brought against an attorney who represents one of the coexecutrixes. Therefore, because Conway's charges against Pearson were groundless, Pearson was entitled to recover the costs of his defense from the Kjorvestad estates.

■ The third issue raised by Conway is whether or not Pearson's fees have been proved reasonable. The gist of this argument is that much of the work performed was outside of Pearson's tax specialty. It is true that Pearson's fees are high ($80.00 an hour), but that fact, standing alone, does not make them unreasonable.

In *Hughes v. North Dakota Crime Reparations Board*, 246 N.W.2d 774 (N.D.1976), this court listed several factors to be considered in determining the reasonableness of an attorney's fees. In *Hughes, supra* 246 N.W.2d at 777, we adopted the following guidelines for cases involving court-awarded attorney fees:

"Because we believe them to be more readily applicable, we adopt the following guidelines from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) time and labor required (distinguishing between legal work in the strict sense, and investigation, clerical work, and compilation of facts and statistics); (2) the novelty and difficulty of the questions (he should not be penalized for accepting a challenge which may result in making new law); (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." [3]

Although the instant case is distinguishable in that it does not involve court-awarded attorney fees, we believe that the same factors should apply here in addition to the factors set forth in Disciplinary Rule (DR) 2–106 and in Ethical Consideration (EC) 2–18 of the North Dakota Code of Professional Responsibility.

 We have held on previous occasions that "[t]he trial court is [an] expert on [the] value of legal services and may consider its own knowledge and experience in making an appraisal of the reasonable value of legal services rendered". *Schollmeyer v. Saxowsky*, 211 N.W.2d 377, 388 (N.D.1973); *Municipal Airport Auth. of City of Fargo v. Stockman*, 198 N.W.2d 212, 215 (N.D.1972);

*Morton County Board of Park Commissioners v. Wetsch*, 142 N.W.2d 751 (N.D.1966). When a trial court finds that an attorney's fees are reasonable, after a consideration of the various factors listed above, we will not overturn that decision absent a clear abuse of discretion.

Although much of the service rendered by Pearson on the Kjorvestad estates was outside of his tax specialty, we find nothing unreasonable about the fees charged by Pearson. Pearson is a skilled, able, and experienced attorney; the fees charged in this case are his standard and customary fees; much of the work was necessitated by Conway's own actions; the services rendered are of high quality; and the Kjorvestad estates are substantial and easily capable of paying the fees.

For reasons stated in the opinion, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

3. *City of Bismarck v. Thom*, 261 N.W.2d 640 (N.D.1977).