FIRST TRUST COMPANY OF NORTH
DAKOTA, Petitioner and Appellee,

v.

Eileen CONWAY, Respondent
and Appellant.

Civ. No. 10499.

Supreme Court of North Dakota.

Feb. 23, 1984.

J. Philip Johnson, of Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for petitioner and appellee.

C. Nicholas Vogel, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for respondent and appellant.

VANDE WALLE, Justice.

Eileen Conway, one of the principal beneficiaries of her parents' estates, appealed from three orders issued by the Nelson County court, which approved the petition of First Trust Company, the successor personal representative, for payment of services rendered by two attorneys and an accounting firm. We affirm.

This court has previously discussed the events engendering litigation between Eileen Conway and Lorraine Parker, sisters and principal beneficiaries of the estates of Guy and Selma Kjorvestad. See *Conway v. Parker*, 250 N.W.2d 266 (N.D.1977) ["Kjorvestad I"]; *Matter of Estates of Kjorvestad*, 287 N.W.2d 465 (N.D.1980) ["Kjorvestad II"]; *Matter of Estates of Kjorvestad*, 304 N.W.2d 83 (N.D.1981) ["Kjorvestad III"].

In *Kjorvestad I* Conway appealed from an order of the district court, which determined adversely to her three issues. The district court ordered her as joint personal representative to execute a power of attorney to Edward W. Brady, Ltd. ("Brady firm"), in order to resolve pending cases before the Internal Revenue Service; it determined that her sister, Lorraine Parker, was entitled to reimbursement from the estates for attorney fees paid to Garry Pearson, even though Parker hired Pearson without her consent; and it permitted both sisters to receive $35,000 as partial distri-

bution of the estates. In recognizing that disagreements between corepresentatives must not preclude efficient administration of probate proceedings, this court affirmed the district court's decision. In *Kjorvestad II* Conway appealed from the district court's judgment, which granted Pearson's petition for payment of attorney fees. We affirmed the district court's decision and held that Pearson's services were for the benefit of the estates, as previously resolved in *Kjorvestad I;* that the services were for the common benefit of the estates; and that Pearson's fees were reasonable. We stated that Conway's intransigence had frustrated amicable settlement of the estates. In *Kjorvestad III* Conway appealed from the district court's judgment which removed both Conway and Parker as corepresentatives. Initially, Conway had petitioned the probate court to remove Parker as a personal representative. After Parker cross-petitioned the court to remove Conway and agreed to resign if Conway were removed, the probate court decided to remove the sisters as corepresentatives. This court dismissed the appeal because of Conway's failure to comply with the North Dakota Rules of Appellate Procedure. We stated that the appeal was substantially without merit and that any further delay in settling the estates would dissipate the funds of the estates.

The present case constitutes Conway's fourth appeal to this court. She appealed from three orders [1] of the Nelson County court which approved direct payment from the estates for the following claims: a $28,-550.33 claim submitted by Garry Pearson for legal services, a $6,829.73 claim submitted by Gordon Caldis for legal services, and a $7,890 claim submitted by the Brady firm for accounting services. On appeal Conway raises three issues. She contends that the county court improperly granted the petition of First Trust Company of North Dakota, the successor personal representative, for payment of the claims directly from the estates because a previous district court order stated that Conway and

Parker, not First Trust, could petition the court for reimbursement of attorney fees and expenses incurred when they acted as corepresentatives of the estates. In the alternative, Conway contends that even if the county court could grant the petition of First Trust, the county court's findings of fact fail to meet the requirements of Rule 52(a), N.D.R.Civ.P. Finally, Conway contends that the findings of fact are clearly erroneous. Appellee First Trust moved this court to dismiss Conway's appeal because the interests of justice require an end to litigation or because the orders are nonappealable.

## MOTION TO DISMISS

First Trust cites as authority for its first ground—that the interests of justice require dismissal—this court's acceptance in *Kjorvestad III* of Justice Story's statement in *Ocean Ins. Co. v. Fields,* 18 Fed.Cas. 532, 539 (C.C.D.Mass.1841) (No. 10406): "[I]t is for the public interest and policy to make an end to litigation, ... [so that] suits may not be immortal, while men are mortal." 304 N.W.2d at 87. In addition, First Trust argues that the appellate process should not be used to the detriment and prejudice of the estates.

Even though nearly a decade after the deaths of the Kjorvestads the estates have not yet been settled, we recognize that the Legislature, and not this court, controls the right to appeal. *City of Riverside v. Smuda,* 339 N.W.2d 768 (N.D.1983); *State v. Jefferson Park Books, Inc.,* 314 N.W.2d 73 (N.D.1981); *Sheets v. Letnes, Marshall & Fiedler, Ltd.,* 311 N.W.2d 175 (N.D.1981). The right to appeal is statutory. The party attempting to appeal must show that the right to appeal comes within the provisions of a specific statute. *State v. Peterson,* 334 N.W.2d 483 (N.D.1983). The right to appeal, however, is an important right, and statutes conferring the right of appeal must be liberally construed to maintain that right. *State v. Howe,* 247

---

1. The county court also ordered that other creditors be paid. These payments are not involved in this appeal.

N.W.2d 647 (N.D.1976). In *Liebelt v. Saby*, 279 N.W.2d 881, 884 (N.D.1979), we stated that "[i]t has been the general rule of this court to decide each case on its merits and not to dismiss an appeal on a technical ground or, in the alternative, to remand it for further proceedings to the district court or even to the probate court."

■ Section 28–27–02, N.D.C.C., specifies which orders are appealable to this court. If an order comes within the meaning of Section 28–27–02, the order is appealable to this court even if it might be argued that the interests of justice clearly support the contention that this court should dismiss the appeal. See Section 30.-1–02–06.1 [U.P.C. 1–308], N.D.C.C. First Trust argues that the orders do not come within the meaning of Section 28–27–02. Conway contends that the orders are appealable under subsections 1 and 5 of Section 28–27–02. Subsection 1 allows an appeal when an order in any action affects a substantial right, and the order in effect determines the action and precludes a judgment from which a party may appeal; subsection 5 allows an appeal when an order involves the merits of an action or some part thereof.

■ Rule 54(b), N.D.R.Civ.P., provides, in part:

"(b) *Judgment Upon Multiple Claims or Involving Multiple Parties.* If more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or if multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

Rule 54(b) pertains to finality and does not supersede statutes which control appellate jurisdiction. *Gauer v. Klemetson*, 333 N.W.2d 436 (N.D.1983); *Sheets v. Letnes, Marshall & Fiedler, Ltd.*, 311 N.W.2d 175 (N.D.1981). Rule 54(b) is designed to deter piecemeal disposal of litigation and to avoid possible injustice caused by unnecessary delay in adjudicating a separate claim. See

*Striegel v. Dakota Hills, Inc.*, 343 N.W.2d 785 (N.D.1984); *Hennebry v. Hoy*, 343 N.W.2d 87 (N.D.1983); *Melland Firestone, Inc. v. Streich*, 226 N.W.2d 141 (N.D.1975); Rule 54(b), F.R.Civ.P., explanatory note. Although thoughtless bifurcation of actions results in unnecessary appeals, we recognize that there are circumstances where the ends of justice require bifurcation of actions by Rule 54(b) order or certification. *City of Minot v. Central Ave. News, Inc.*, 325 N.W.2d 243 (N.D.1982).

In the present case the county court did not explicitly mention Rule 54(b); yet, when it rendered its decision from the bench, it recognized that there was no just reason for delay and that the orders were subject to appeal. The court decided to issue separate orders to each creditor for two significant reasons. The creditors could be paid even though the court decided to leave pending Conway's petition for expenses. The court recommended that Parker, who had not yet sought reimbursement for expenses, inform First Trust of her expenses. The court stated that if First Trust did not challenge the reasonableness of either Parker's or Conway's expenses, it would accept First Trust's decision and save time by not requiring another hearing. It stated that if a hearing on the expenses was necessary, it promised to decide the matter within a month. The court also explained that it was issuing separate orders to facilitate the process of appeal. The court stated, "We will make these separate orders and should you decide to exercise your right to appeal, that will be your decision."

■ The county court fully informed the parties that the orders were appealable and emphasized that there was no reason for delay. Although a county court should explicitly refer to Rule 54(b) in directing entry of judgment, we believe that our determination that the county court issued a Rule 54(b) order is consistent with the rationale of Rule 54(b) and the Uniform Probate Code. Section 30.1–01–02(2)(c) [U.P.C. 1–102] provides that one of the purposes of the Uniform Probate Code is to

"promote a speedy and efficient system for liquidating the estate of the decedent ..." We recognize that in some probate cases litigation may extend for almost a quarter of a century. See *Kaldor v. Bjerke,* 300 N.W.2d 202 (N.D.1980). Parties in probate cases bear the duty of requesting a Rule 54(b) order or certification if they seek an appeal. In the present case the county court by its statements indicated that Conway had the right to appeal pursuant to Rule 54(b).

## RIGHT TO PETITION

Conway's view of First Trust's right to petition the county court for payment of the claims submitted by Pearson, Caldis, and the Brady firm is based upon her peculiar interpretation of a judgment issued in June 1980 pursuant to order for judgment by Judge Smith, a district court judge. The judgment stated:

"5. All attorney's fees, including attorney's fees incurred by the co-executrices, or either of them to date, in all the proceedings involving the Estate of Guy Kjorvestad, Sr., Deceased, and Selma Kjorvestad, Deceased, whether successful or not have been incurred in good faith, and Lorraine Parker and Eileen Conway each shall have, in connection with this order affecting their removal, the right to petition the County Court for the allowance of payment to said party of necessary expenses and reasonable attorney's fees. The allowance of attorney's fees in these removal proceedings shall extend to any proceedings for the review of this judgment.

"6. Any additional attorney's fees incurred over and above those described in number 5 above will be payable out of the estate to the individual beneficiaries only in the event that a claimant beneficiary succeeds in that litigation."

Judge Smith thus held that both Conway and Parker, as corepresentatives, could petition the court for reimbursement because they had met the requirements of Section 30.1–18–20 [U.P.C. 3–720], N.D.C.C., which provides:

"30.1–18–20(3–720). *Expenses in estate litigation.*—If any personal repre-

sentative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred."

On appeal Conway argues that because First Trust's petition referred to the judgment, and the judgment referred only to petitions by Conway and Parker, the county court could not grant First Trust's petition.

■ The petition did refer to the prior judgment, and it also mentioned a later order of a county court judge regarding the actions of First Trust as successor personal representative. This order stated, in part:

"4. First Trust Company of North Dakota shall be authorized to pay, without order of County Court, routine administration expenses and fiduciary income taxes due and owing federal or state authorities. *All other expenses,* including fees of First Trust Company of North Dakota and its counsel *and prior attorney fees,* will be paid only upon approval of the County Court after proper notice to interested parties." [Emphasis supplied.]

In challenging the procedure employed by First Trust Conway argued that the petition was based upon Judge Smith's judgment. She failed to consider the later order, which stated that First Trust also had the right to petition for expenses incurred and *prior attorney fees.* This declaration of rights is in harmony with the Uniform Probate Code. See Sections 30.1–18–03 [U.P.C. 3–703], N.D.C.C., and 30.1–18–15(27) [U.P.C. 3–715], N.D.C.C. Both the county court judge and Judge Smith recognized that the successor personal representative of the Kjorvestad estates, in order to act expeditiously and effectively, would need to be autonomous in determining the best interests of the estates, subject only to court approval. As a fiduciary First Trust was held to a high standard of care.

■ In *Kjorvestad I* we discussed two methods for paying expenses and fees: A personal representative may be reimbursed for expenses that have been paid or, "subject to approval of the probate court, *payment may be made directly to the attorney out of the estate.*" [Emphasis supplied.] 250 N.W.2d at 273. If First Trust had received or paid to agents excessive compensation, Conway could have invoked Section 30.1–18–21 [U.P.C. 3–721], N.D. C.C., to recover the excessive compensation. But in the present case the county court conducted a hearing at which Conway raised her objections. After listening to witnesses and receiving into evidence various bills, the county court determined the amount of compensation to be paid to the three creditors. We reject Conway's argument that the county court improperly interpreted Judge Smith's prior judgment.

## FINDINGS OF FACT

Conway also argues that the county court failed to comply with Rule 52(a), N.D. R.Civ.P., which requires that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law ..." She maintains that there were no detailed findings of fact or conclusions of law. She asks this court to remand for additional findings of fact. First Trust contends that even if the findings of fact are inadequate this court need not remand because Rule 52(a) is not applicable to orders issued in probate proceedings.

This court recently stated that Rule 52(a) is applicable to probate proceedings in county court under Title 30.1, the Uniform Probate Code. *Matter of Estate of Raketti*, 340 N.W.2d 894 (N.D.1983).

■ Conway argues that the findings of fact are insufficient. Conway did not make a motion pursuant to Rule 52(b), N.D.R. Civ.P., which would have permitted the court to amend its findings or to make additional findings. A Rule 52(b) motion may be made prior to as well as after the entry of judgment. *Dangerfield v. Markel*, 278 N.W.2d 364 (N.D.1979).

In the present case there is no document entitled "findings of fact" nor was a memorandum opinion filed. The three orders are very similar in language, except for the amount specified for payment. The order granting payment to the Brady firm states, in part:

"The Court finding that said fees were necessarily incurred in proceedings involving these estates by the respective co-executrices for periods evidenced by the billings and that such fees are reasonable for the time and services provided, ORDERS that payment by the personal representative ... be approved."

Although this court has stressed the importance of clearly articulating the findings of fact, we have nevertheless recognized that an order amending a judgment and a transcribed oral opinion may be sources containing the findings of fact. *Clement v. Clement*, 325 N.W.2d 262 (N.D.1982); *Soby Const., Inc. v. Skjonsby Truck Line*, 275 N.W.2d 336 (N.D.1979).

■ In the present case the county court determined that the fees were for the periods as indicated on the bills, the fees were incurred during the administration of the estates, the fees were necessarily incurred, and the fees were reasonable. These findings are further explained by the county court's oral opinion. The court stated:

"... I feel the evidence clearly shows that these fees are necessary and reasonable in the administration of this estate and because of that particular finding on the record, and because there is no evidence before the Court which would indicate that any of these claims have not been substantiated or shown to have been unnecessary or unreasonable, I am now going to approve the claims for the respective amounts involved ..."

The orders and the oral opinion indicate the basis of the trial court's decision. The ends of justice would not be served by remanding this case to the county court; Conway has not specified how additional findings would be significant in the disposition of this case. See *Rummel v. Rum-*

*mel,* 265 N.W.2d 230 (N.D.1978). The findings meet the minimum requirement of Rule 52(a). See *Ebertz v. Ebertz,* 338 N.W.2d 651 (N.D.1983); *Gross v. Gross,* 287 N.W.2d 457 (N.D.1979).

Conway further argues that the findings of fact are clearly erroneous with respect to the claims submitted by attorney Gordon Caldis and by the Brady accounting firm. She does not dispute the claim submitted by attorney Garry Pearson. Parker, a former corepresentative present at the hearing, did not challenge any of the claims submitted. Conway maintains that the claims of Caldis and the Brady firm are unreasonable and that the Brady firm's failure to provide time records in support of its claim bars it from being paid. Although she recognizes that the county court is authorized to grant a petition for payment of fees incurred during the administration of an estate, Conway contends that, with respect to Caldis's bill, the more appropriate forum is the Fee Arbitration Committee of the State Bar Association.

At the hearing Caldis testified that he had provided Conway with legal services from March 2, 1976, to September 19, 1980. Business records substantiating his claim included copies of itemized statements sent to Conway, time slips, and cost records, which were kept in the normal course of business. The records indicated that the total bill for services was $21,498.45 and that Conway had paid $14,668.72, leaving a balance of $6,829.73. The bill was based upon an hourly rate for services. The claim also included expenses for telephone calls and out-of-pocket expenses. Caldis stated that he had made no effort to collect from Conway because he knew that Judge Smith's order authorized payment for his services.

Rodney Wilson, a certified public accountant for the Brady firm, testified that the firm had provided services from 1975 to 1977. During that period the Brady firm had prepared a twelve-page accounting report of the Kjorvestad estates. To substantiate the firm's claim, Wilson introduced into evidence two statements. One statement specified in detail the services it had provided in preparing the accounting of the Kjorvestad estates; for these services the fee charged was $5,790. The other statement concerned services provided after the accounting; for these services the fee was $2,100. The bill was based upon an hourly rate for services. The Brady firm did not submit time slips. Conway testified that she never approved the returns prepared by the Brady firm, that she was being charged for the time the Brady firm spent in defying a court order to surrender her father's records, and that there had been embezzlement and tax fraud.

In its orders the county court found that the fees charged by Caldis and the Brady firm were necessarily incurred in proceedings involving the estates when Conway and Parker acted as corepresentatives and were reasonable because of the time spent and services provided. The court stated that there was no evidence that the claims had not been substantiated or that the fees were unnecessary or unreasonable.

■■■ Findings of fact will not be set aside unless they are clearly erroneous or this court is left with a definite and firm conviction that a mistake has been made. *Graves v. Graves,* 340 N.W.2d 903 (N.D. 1983); *In re Estate of Elmer,* 210 N.W.2d 815 (N.D.1973). We recognize that the trial court has the opportunity to observe the demeanor of the witnesses and to ascertain their credibility. *Ebertz v. Ebertz, supra.* A trial court is considered an expert in determining the value of reasonable attorney fees, and it may consider its own knowledge and experience in making an appraisal of the reasonable value of the services rendered. *Nygaard v. Robinson,* 341 N.W.2d 349 (N.D.1983); *Kjorvestad II, supra.* Although this court has adopted twelve guidelines for determining what constitutes reasonable attorney fees [*Hughes v. North Dakota Crime Victims Rep. Bd.,* 246 N.W.2d 774 (N.D.1976)], we recognize that this determination rests largely in the trial court's discretion. *Kjorvestad I, supra.* In *City of Bismarck v. Thom,* 261 N.W.2d 640, 646 (N.D.1977), we stated that "it is virtually impossible to

set out every conceivable item that should be considered, ..."

 Caldis's testimony and the business records received into evidence support his claim for $6,829.73. Conway's contention that the claim should have been submitted to the Fee Arbitration Board of the State Bar Association is without merit. As we stated above, the county court had the authority to determine the merits of the claims submitted by examining the evidence and evaluating the testimony. In making such a determination the county court recognized First Trust's duty to expeditiously and efficiently administer and settle the estates. At the hearing Conway had the opportunity to prove that Caldis's fee was unreasonable.

 Her argument that the Brady firm failed to provide sufficient information to substantiate its claim is similar to her argument in *Kjorvestad I*. In *Kjorvestad I* we rejected her argument that Pearson did not substantiate his claim, even though he had produced billing statements and had explained his method of computation. Although detailed hourly time records would have further substantiated the claim of the Brady firm, this court will not dictate what documents a creditor must supply to establish a claim. In *D.M. v. W.J.S.*, 315 N.W.2d 683 (N.D.1982), we upheld an award of attorney fees even though the itemized bill from the attorney did not indicate the number of hours spent in working.

We are not left with a definite and firm conviction that a mistake has been made.

The orders are affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.