In the Matter of the Estate of ELIZA M. PELGRAM, Deceased.

Surrogate's Court, New York County, February 24, 1933.

*Charles L. Craig*, for the petitioner.

*Herbert Noble*, for Charles R. Pelgram, 2d, Robert C. Pelgram, infant, and Herbert Noble, as general guardian of Robert C. Pelgram.

*Duncombe & Duncombe*, for Alfred E. Ommen and Ralph E. Stone, trustees of Elizabeth Fleming Stone and Raoul P. Fleming.

*Street & Adikes*, for Naomi L. Pelgram.

DELEHANTY, S.   By order to show cause dated December 23, 1932, and returnable December 27, 1932, application was made to bring in, as a party to the proceeding hereinafter referred to, Ralph E. Stone, who was trustee under the last will and testament of the above-named deceased.   No objection having been made, the application is granted and Mr. Stone, as such trustee, is ordered to be joined as a party and consequently the memoranda submitted on his behalf by Messrs. Duncombe & Duncombe has been considered by the court.

By petition verified July 13, 1932, Charles L. Craig applied under the provisions of section 231-a of the Surrogate's Court Act to have fixed his compensation as attorney in respect of the matters referred to in the petition.   No oral hearing was had upon this petition and the answer thereto, though petitioner asserts that he was advised that the date for hearing would be fixed by notice through the *Law Journal.*   No notice of hearing was given, but on December 19, 1932, the application was denied by my predecessor.   Thereupon by order to show cause dated December 20, 1932, petitioner applied for a hearing and on the return of such order to show cause an argument was had on December 28, 1932, which eventuated in a reference of the whole matter to the successor of Mr. Surrogate O'BRIEN when appointed.   The minutes of this argument show that by agreement of the then present parties the matter was to be taken up *de novo* and determination made (1) whether a reargument should be allowed; (2) whether or not the services benefited the estate, and (3) whether petitioner is entitled to reasonable compensation therefor.

The matter having been placed again on the calendar, reargu-

ment was allowed and all parties in interest fully heard. The question remaining for decision is whether petitioner has established a basis upon which compensation may be allowed to him from the trust estate and the amount, if any, of such allowance.

In reaching the determination hereinafter stated, the court has considered the petition of Charles L. Craig, verified July 19, 1932, the answer thereto of Alfred E. Ommen, verified September 19, 1932, the answer of Charles R. Pelgram, 2d, verified July 27, 1932, the answer of Robert Cole Pelgram, verified by Herbert Noble, his general guardian, July 27, 1932, the answer of Elizabeth F. Stone, verified July 28, 1932, the affidavit of Henry S. Fleming, verified January 26, 1933, the affidavit in the nature of an answer by Ralph E. Stone, verified February 1, 1933, the affidavit of John A. Miller, verified December 20, 1932, the affidavit of Charles H. Street, verified December 24, 1932, the affidavit of Ethel Colson, verified December 24, 1932, the affidavit of Charles L. Craig, verified December 23, 1932, the affidavit of Charles L. Craig, verified February 3, 1933, and the printed record on appeal to the Appellate Division, Second Department, from the order of the Supreme Court of Dutchess county, dated December 2, 1927, and denying the motion to vacate the order appointing the committee of the person and property of Caroline M. Fleming.

Eliza M. Pelgram died April 9, 1910, leaving surviving her a daughter, Caroline M. Pelgram Fleming, and other next of kin. Her will was admitted to probate on May 5, 1910, and letters testamentary and of trusteeship were issued to Charles R. Pelgram and Caroline M. Fleming. Charles R. Pelgram died in or about October, 1926. Caroline M. Fleming, as surviving trustee, procured to be judicially settled the accounts of the trustees originally named. On March 12, 1926, Alfred E. Ommen was appointed cotrustee with Caroline M. Fleming and the trust estate was thereafter under the control of such trustees until the death of Caroline M. Fleming on December 2, 1927. After December 2, 1927, Alfred E. Ommen acted as sole trustee until September 12, 1932, when by appropriate order Ralph E. Stone was appointed cotrustee. The latter is now the sole trustee by reason of the death on December 16, 1932, of Alfred E. Ommen.

While the trust was being administered under the joint trusteeship of Caroline M. Fleming and Alfred E. Ommen, an *ex parte* proceeding in lunacy was initiated by the husband of Caroline M. Fleming, as a result of which a justice of the Supreme Court in Dutchess county adjudged Caroline M. Fleming to be insane and committed her to a private institution for the insane. Thereupon in a further proceeding in Dutchess county, the husband of Mrs.

Fleming procured on April 2, 1927, a further order from the court appointing such husband the committee of the person and estate of Caroline M. Fleming. On April 29, 1927, Henry S. Fleming, as husband and committee of Caroline M. Fleming, applied to the Surrogate's Court, New York county, for a decree revoking the appointment as trustee of Caroline M. Fleming and for the appointment as successor to her of N. Otis Rockwood. Upon this petition for revocation of the letters to Caroline M. Fleming, a citation was issued to Alfred E. Ommen, as cotrustee, and thereupon ensued a further series of legal proceedings which appear to have generated so much heat and ill feeling as to inspire counsel to include in the papers submitted on this application material which has made burdensome the ascertainment and segregation of the facts pertinent to the issue to be determined.

An application was made to vacate the order under which Caroline M. Fleming was committed as an insane person. The papers on the motion are voluminous. This motion was successful. Thereupon a further motion was promptly made to vacate the order of April 2, 1927, whereby Henry S. Fleming was appointed committee of the person and property of Caroline M. Fleming. This motion was denied and an appeal from the order of denial was taken. This appeal was later dismissed upon the Appellate Division learning that Caroline M. Fleming had died. Further proceedings were had in Westchester county and in New York county over whether there was jurisdiction in any court to appoint a cotrustee to succeed Caroline M. Fleming and, if there was, which of two courts acting in the matter should exercise the power. Eventually the Court of Appeals adjudicated this controversy in *Colson* v. *Pelgram* (259 N. Y. 370).

The purpose of the motions to vacate the commitment of Caroline M. Fleming and to vacate the order appointing a committee for her person and property was to defeat the proceeding in the Surrogate's Court initiated by the husband of Caroline M. Fleming to remove her as trustee and substitute another in her stead. If in truth Caroline M. Fleming was not an incompetent she was not only entitled to but was required to act in every matter arising in the trust administration except possibly purely ministerial matters. Her cotrustee was unable to act in the trust, at least in any matter requiring discretion, without her concurrence. (*Ridgeley* v. *Johnson,* 11 Barb. 527; *Cooper* v. *Illinois Central R. R. Co.,* 38 App. Div. 22, at p. 28; *Fritz* v. *City Trust Co.,* 72 id. 532.) The commitment of Caroline M. Fleming as an insane person did not, of course, terminate her trusteeship. It has been held that a trustee is under a duty to apply to the appropriate court for the removal of a cotrustee

who has become incompetent. (*Bascom* v. *Weed,* 53 Misc. 496, at p. 509.) There should be no doubt of the power of a cotrustee, convinced of the sanity of his fellow fiduciary, to resist what he believes to be an unwarranted assault upon the status of his fellow. Certainly no question would be made that it would be the cotrustee's duty so to resist if, for instance, the fiduciary sought to be removed were one named by a testator and expressly required to join in all trust proceedings. While here the suggested facts do not exist (Caroline M. Fleming being a successor trustee named by the court), and hence no express duty devolved on the cotrustee Ommen to resist the proceeding for removal, there is still no doubt of his right to resist the removal and the consequent effect upon the trust, if in good faith he concluded that the removal proceedings were unwarranted.

These considerations lead to the inquiry whether there existed a basis upon which in good faith Alfred E. Ommen could determine that his duty required him to resist the removal proceedings. His cotrustee was adjudicated an insane person without notice to any one (not even to herself) and in an upstate county. Ascertainment of the whereabouts of the cotrustee was delayed and the data respecting the basis for adjudication of insanity was procurable with difficulty since the papers had been sealed. When the papers were made available, the immediate blood relatives of the cotrustee asserted that some of the fact assertions in the papers were untrue. In addition, selfish motives were attributed to the moving party on the application in respect of the future handling of the trust property if the application for removal were to succeed. Much of the family history of controversy between the moving party and his wife, the cotrustee, appears to have been generally known to those with whom Alfred E. Ommen had contact in relation to the trust property and otherwise.

It is not necessary to determine and the court expressly asserts that it has not determined that there was in truth any basis at all for impugning the good faith of Mr. Fleming in his relations with the cotrustee and in the various proceedings instituted by him in relation to her and to her trusteeship. It suffices to say that there is shown enough to have warranted Alfred E. Ommen (even though mistakenly) in believing that his duty to the trust required him to resist the proceedings for removal. He was a lawyer of wide experience and the record shows that he proceeded with caution in respect of the matter. He determined to resist the removal proceedings and his good faith in reaching that determination is established satisfactorily.

The arrangement entered into with the petitioner by the trustee

clearly shows that both trustee and petitioner contracted on the basis of estate liability for services. This was a permissible and enforcible agreement. (*Schoenherr* v. *Van Meter*, 215 N. Y. 548, at p. 552.)

The personal interests of the sisters of the cotrustee in correcting the fact misstatements which they deemed a reflection and in protecting their sister from what they conceived to be an unjust adjudication as an insane person, led them to join in the arrangement and to bear part of the cost. It is conceded that they have paid petitioner $5,000 as their share of the cost of the service rendered by him in the matter. Petitioner now asks that the balance of $5,000 remaining unpaid of his original bill of $10,000 be paid out of the estate.

Before his death the cotrustee, Alfred E. Ommen, filed an answer in which in effect he confirmed the arrangement asserted by the petitioner but denied that any service had yet been rendered which was contemplated by him to be for account of the estate. The affidavits of Charles H. Street and Ethel M. Colson, verified December 24, 1932, and of petitioner, verified December 23, 1932, and the exhibits attached to the latter, establish satisfactorily the contentions of petitioner that his retainer by the trustee for the estate was in early May, 1927, and that the proceedings in the Dutchess county courts were a necessary part of the general program to resist the removal proceedings which otherwise would have been merely formal. (Surr. Ct. Act, § 99, subd. 1.) That the trustee recognized at least a basis to the present claim of petitioner is evident from the third and fourth paragraphs of his letter of July 12, 1928, of which a photostat is attached to petitioner's affidavit verified December 23, 1932. The otherwise unusual delay in presenting this application is there foreshadowed in an unwillingness of the trustee to add this transaction to a then pending accounting or to make payment without formal court approval either on a new accounting or on application by petitioner. The foregoing discussion suffices to show that the estate is liable if the services were beneficial to the estate.

On this question of benefit it is suggested among other things by petitioner that the resistance to the removal proceedings had a net result of effecting savings in trustees' commissions, because during the pendency of the whole body of litigation only a single trustee was in office and hence only a single commission was payable. This is not such a benefit as will furnish basis for an allowance.

The present trustee and the other objecting parties in this proceeding assert that the services were of no benefit to the estate because in truth Caroline M. Fleming was insane, her commitment

was proper, she should have been removed as trustee, and hence that the resistance to her removal was a waste of effort and allowance therefor would be a waste of estate funds. In addition the objectants urge that the controversy was for the private benefit of Ethel M. Colson and Naomi Pelgram who have paid for the services.

The first stated position of the objectants begs the whole question. To be beneficial, it need not be shown that net tangible monetary advantage was realized or that a money loss was avoided. The administration of trust property does not permit so simplified a test of " benefit." The word applies to every aspect of administration which sound judgment would approve. If in the carrying on of such an administration legal services are required either in defense or in attack the fiduciary may contract for or may pay and receive allowance for reasonable fees.

Both sides of the controversy refer to and cite in support of their respective positions the case of *Jessup* v. *Smith* (223 N. Y. 203). The court in its opinion said (p. 207): " The question remains whether the services were beneficial in the preservation of the trust. We have no doubt that they were. Mr. Smith had been named in the will as a trustee. He owed a duty to the estate to stand his ground against unjust attack. He resisted an attempt to wrest the administration of the trust from one selected by the testator and to place it in strange hands. He did more. By his cross-application, he procured the appointment of a third trustee, and broke a deadlock which threatened the safety of the estate. Plainly, such services, if paid for by the trustee personally, would justify reimbursement on his accounting before the surrogate. (*Matter of Ordway*, 196 N. Y. 95, 98; *Matter of Higgins*, 80 Misc. Rep. 609; *Matter of Assignment of Cadwell's Bank*, 89 Iowa, 533, 542; *Lycan* v. *Miller*, 56 Mo. App. 79.) That must be because they were beneficial to the trust."

The test of benefit so stated by the Court of Appeals obviously permits a finding of " benefit " to the estate in the resistance to the removal of a cotrustee. The point is urged by objectants that the administration of the trust could continue unhampered while the contest over removal raged and hence that Alfred E. Ommen had no need to intervene in the interests of the trust and hence that there exists no basis for compensation of an attorney acting for him. This view ignores the real character of the title and powers of cotrustees. In legal effect they are one (*Ridgely* v. *Johnson, supra*), and hence the same principles must apply as if the attack were made on Alfred E. Ommen himself. Having found that the removal of the cotrustee was contested in good faith it follows that the trust estate is chargeable with the cost of the legal

proceedings conducted up to the point where further contest would be unreasonable. In the instant case, such point was reached when the Supreme Court of Dutchess county, after full hearing, declined to remove the committee. (*Matter of Ordway*, 196 N. Y. 95, at p. 98.) There was then no sound basis for further contest. The further proceedings on appeal were futile, in so far as the trust estate was concerned, for the further reason that the cotrustee had died on the day of the decision upholding the status of the committee. Her death vested Alfred E. Ommen with full power in respect of the trust property and removed completely the embarrassment in administration caused by the contested status of the cotrustee.

The second position stated by objectants is that the controversy was for the private benefit of Ethel M. Colson and Naomi Pelgram. The interest of these parties is not inconsistent with an estate interest nor does such private interest operate to defeat the claim of estate liability. (*Matter of Ordway, supra; Matter of Van Volkenburgh*, 139 Misc. 437; *Ellis* v. *Kelsey*, 241 N. Y. 374, at pp. 381, 382.) There remains for consideration the problem what allowance, if any, should be made to petitioner. He asks the full sum of $5,000 on the basis of an express agreement. In opposition it is urged that the moneys received by petitioner from sources other than the trust estate amply compensate him for the services rendered. The bill annexed to the petition shows that petitioner is asking compensation for a substantial amount of work after December 2, 1927, when Caroline M. Fleming died. As stated hereinabove, no service after that date can be considered. It is clear, too, that the trustee in engaging the services of petitioner contemplated that the sum of $5,000 discussed as the estate liability would cover all services which would have been necessary in proceedings in the Surrogate's Court. The trustee in making, as he lawfully did, an agreement that the estate and not the trustee would bear the cost of the service could not give to petitioner anything more than the equivalent of an assignment of the lien of the trustee for reimbursement had he paid the petitioner and then sought allowance for the payment. (*Strong* v. *Dutcher*, 186 App. Div. 307, and cases therein cited.)

Taking into account all of the factors discussed, a further allowance to petitioner will be made in the sum of $1,500, which amount is hereby fixed as the reasonable value of the services of petitioner to the trust estate. Submit decree accordingly.