In the Matter of the ESTATE OF Guy KJORVESTAD, Sr., Deceased, and in the Matter of the Estate of Selma Kjorvestad, Deceased.

FIRST TRUST COMPANY OF NORTH DAKOTA, Petitioner and Appellee,

v.

Eileen CONWAY, Respondent and Appellant.

Civ. Nos. 10,866–10,867.

Supreme Court of North Dakota.

Oct. 1, 1985.

Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for petitioner and appellee; argued by J. Philip Johnson.

Eileen Conway, respondent and appellant, appeared pro se.

MESCHKE, Justice.

This is the fifth chapter of a bitter dispute between two sisters about the substantial estates of their parents. Since we affirm orders approving the final account and distribution, this obsessive ordeal ought to end.

Guy Kjorvestad died in 1973. His widow, Selma Kjorvestad, died in 1974. Their surviving daughters, Eileen Conway and Lorraine Parker, were the ultimate equal devisees of both estates and became co-representatives of them.

There followed years of "direct conflict between the two personal representatives," "failure of the representatives to agree," "disputing," "Conway's intransigence [which] ... continuously frustrated amicable settlement of these estates," and "unfounded grievance charges" against an attorney, as described in the opinions in the first two unsuccessful appeals by Conway. *Conway v. Parker,* 250 N.W.2d 266 (N.D. 1977) [*"Kjorvestad I"*] and *Matter of Estates of Kjorvestad,* 287 N.W.2d 465 (N.D. 1980) [*"Kjorvestad II"*].

The sisters then each petitioned for removal of the other. The county court removed both and appointed First Trust Company of Fargo as the successor personal representative. Conway's appeal of these removal orders was dismissed as "substantially without merit." *Matter of Estates of Kjorvestad,* 304 N.W.2d 83 (N.D.1981) [*"Kjorvestad III"*]. We observed that "the numerous times the court was called upon to resolve issues resulting from the contentious attitude, if not quarrelsome behavior, existing between the corepresentatives" certainly justified their removal. 304 N.W.2d at 86. We pointed out that further litigation "would only serve to extend the time in which the estates are finally settled and would dissipate the funds of the estates to the detriment and prejudice of the estates." 304 N.W.2d at 87.

Conway's contentiousness continued. In her fourth unsuccessful appeal, she challenged payment of fees to two attorneys and an accounting firm for services to the estates while the sisters were co-representatives. *First Trust Company of North Dakota v. Conway,* 345 N.W.2d 838 (N.D. 1984) [*"Kjorvestad IV"*].

This is *"Kjorvestad V."*

Conway here appeals orders approving the final accounting of First Trust and ordering final distribution of the combined estates to Conway and Parker equally except for several undisputed and minor adjustments. She claims the county court erred:

(1) In excluding evidence at the hearing on the final account about the several years prior to First Trust becoming personal representative of the estates ("Reconstructed Account");

(2) In approving the final account of First Trust when it had not collected and accounted for all of the assets of the estates;

(3) In approving the final account in her mother's estate without a full inventory, appraisal or notice to creditors; and

(4) In approving compensation and expenses for First Trust and its attorney for services in winding up the estates.

Conway did not testify and called no witnesses. Her hearing evidence consisted only of her cross-examination of an officer of First Trust and 15 exhibits. These exhibits were summaries of items she claimed to be missing from safe deposit boxes, with copies of documents showing inventory of and access to the boxes by herself and her sister between 1973 and 1978 (Exhibits A through I); a copy of an amendment to a judgment dated July 14, 1980 (Exhibit J); a copy of a prior order about funds of the estate in Ramsey County National Bank and related correspondence of May 9, 1980 (Exhibits K and L); two pages from a transcript of a December 8, 1983, hearing in the estates (Exhibit M); an April 2, 1973, letter on the value of vehicles in the estate (Exhibit N); and a list of eight figures, without references, totaling $38,836.67 and labeled "Missing Money" (Exhibit O).

Without any references to the record, Conway's "statement of facts" rails against her sister ("manic crime spree;" "embezzled money;" "embezzled bonds, cash, bank money-orders, checks;" "forged" signatures; "illegally redeemed securities and illegally moved $100,668.68 in cash assets;" "looted four safe deposit boes [sic];" "destroyed ... monthly bank statements to cover-up additional forgeries;" "destroyed all records;" and "embezzled approximately $39,000.00 from the estate"); rails against one prior attorney for the estate ("deceitfully misrepresenting himself;" "defied two court orders;" "felonies, fraud, forgeries, theft, embezzlements and a tangled web of falsified records to cover-up the wrong-doing;" "10 years of trama [sic], threats, insults, verbal and non-verbal abuse inflicted" by him on her; his "ruthless, vicious interference;" "conspired;" "concealed;" acted "illegally;" "also practiced deceit;" and "cover-up [of] massive fraud and felonies committed against the estate."); rails against one of her own lawyers ("concocted a scheme;" "lied;" participating in a "fraudulent" report, "fraudulent accountimg" [sic] and a "fraud scheme.") and rails against a prior accountant ("falsified bank deposits to cover-up Parker's embezzlements;" "falsified grain sales;" and "falsified bank account ownership.")

Her unsupported vilification extends to a county judge ("brutually assaulted Conway;" "cover up" of "irregularities;" "illegal court order;"), a district judge ("[f]alse statements;" "illegal Amendment to Judgment ... to cover-up the 'doctored' files and the pay-offs made to cover up the fraud;") and a clerk of court ("disoriented, hysterical behavior").

She proceeds with scathing accusations against First Trust and those associated with it. She rails that First Trust "breached their fiduciary duty," "committed perjury," "employed perjury, deception, misrepresentation and fraud to cover-up" assets, and "committed perjury." She accuses an officer of First Trust of making "thirteen false statements ... to cover-up" prior "illegal" activities of a lawyer for the estate, and accuses a lawyer for First Trust of "making sixteen false statements ... to cover-up" such activities.

None of these vituperations are supported by any references to the record. Thus, Conway's presentation is lacking in evidence though lengthy in vilification.

We first summarize what is not involved. No specific claim is made of any mishandling by First Trust of property of the estates which it held. Rather, the principal issues relate to its accounting for funds and property for the period before it became responsible. No claim is made that the essentially equal distribution of remaining assets on hand is incorrect. Rather, Conway disputes whether First Trust followed proper procedures and was properly allowed compensation and expenses.

In this context, we address issues that Conway presents pro se. Although she has had eleven different attorneys in the course of eleven years of strife, she was not represented by counsel at the hearing on the final account and she is not represented by counsel on this appeal. She has been told before that "the rules or statutes should not be modified or applied differently merely because a party not learned in

the law is acting pro se." *Kjorvestad III,* 304 N.W.2d at 85. We consider her arguments accordingly.

## I. RECONSTRUCTED ACCOUNT

Pursuant to a settlement stipulation in open court, approximately twenty quarters of farm land and substantial cash were divided and distributed equally to Parker and Conway in 1977. Remaining grain on hand was ordered distributed in 1978.

On September 4, 1980, First Trust was appointed successor personal representative of both estates under supervised administration. Since the duties and powers of a personal representative commence upon appointment, § 30.1–18–01, N.D.C.C., the order appropriately specified that First Trust was "hereby absolved of any and all liability for any actions, transactions, errors or omissions of Lorraine Parker and Eileen Conway in their capacity as co-executrices prior to the date of its appointment as successor personal representative." An accompanying order directed First Trust to "reconstruct as best it can a report and accounting of the estates … for the period from January 23, 1978, through September 4, 1980, and upon completion submit said report and accounting to the County Court for approval." Parker and Conway were ordered to account and to "deliver immediately to First Trust … all of the assets of each estate in their possession which have not heretofore been distributed or liquidated." They were further directed "to cooperate in every way possible to assist First Trust … in marshalling said remaining assets."

On November 17, 1982, First Trust filed a Petition For Approval of Reconstructed Account and Report for the period from January 23, 1978, to September 4, 1980. The petition showed that no report and account had been filed by either Parker or Conway, but listed checking accounts, certificates of deposit, mutual funds, and common stock of the estates which First Trust had gathered. This account itemized coins and jewelry found in a safe deposit box of the estate and described several town lots remaining in the name of Selma Kjorvestad.

Conway was notified of the hearing on this account. She "admits that there was a hearing on December 7, 1982, regarding First Trust's petition for approval of [this] reconstructed account and report" and that she participated in it, represented by counsel. The hearing was not recorded or transcribed. Although Conway claims that First Trust withdrew its Reconstructed Account at the hearing, there is nothing to support this assertion.

■ The county court filed its order on December 8, 1982, which "allowed and settled" the Reconstructed Account. Contrary to Conway's claim, the order was not "secret." It was publicly filed. Therefore, it is presumed regular and correct until shown otherwise by evidence. N.D.C.C. § 31–11–03(15), (16) and (17); *Midboe v. Midboe,* 303 N.W.2d 548, 551 (N.D.1981).

Conway sees something sinister in the fact that the order was dated and filed on the day following the hearing. We do not. It is not out of the ordinary for a judge to enter an order days or even weeks after a hearing, depending on the difficulties in the judge's deliberation and schedule.

Conway's chief complaint is that she did not receive notice of entry of the order approving the Reconstructed Account. Therefore, she argues, she should have been able to offer additional evidence relating to the Reconstructed Account at the hearing on the final account, but was foreclosed from doing so when the county judge ruled that he would "not allow any inquiries or presentation of evidence to matters that precede September 4, 1980." We believe that Conway's argument misconceives both the purpose of the hearing on the final account and the effect of lack of notice of entry of the order.

The purpose of the hearing on the final account was to consider First Trust's conduct of the estates, not that of Conway and Parker. First Trust was not responsibile for assets prior to September 4, 1980. First Trust's limited responsibility for ac-

counting prior to September 4, 1980, was only "as best it can." It had no help from either Parker or Conway.

■■■ Since the hearing on the Reconstructed Account had been held, Conway was not necessarily entitled to present further evidence on it. Whether such evidence was material to the final account was largely within the sound discretion of the county court. *Okken v. Okken Estate*, 348 N.W.2d 447, 451 (N.D.1984); *Walling Chemical Co. v. Bigner*, 349 N.W.2d 647 (S.D.1984). Since only First Trust's handling of the remaining estates was involved in the hearing on the final account, the county judge did not abuse his discretion in ruling that evidence concerning the Reconstructed Account was not material.

■■■ Lack of notice of entry of an order after a hearing does not leave the hearing open-ended, as Conway assumes. She had notice of the hearing and participated in it. The hearing was held and the order was publicly filed. The county court no doubt had power to grant relief from the order and hold another hearing, upon proper motion for reasons justifying relief, if duly made; Rule 60(b), N.D.R.Civ.P. However, this does not mean that the subject of the hearing otherwise remained open for more evidence at later hearings. Ordinarily, the effect of lack of notice of entry of an order in probate is that the time for appeal remains open. *See In the Matter of Alf J. Bo*, 365 N.W.2d 847, 850 (N.D.1985) ("No notice of entry of the order has been served in this case. Therefore, the time for appeal technically has not yet commenced to run."); *Matter of Estate of Erickson*, 368 N.W.2d 525, 528 (N.D. 1985).

The general theory as to all formal proceedings under the Probate Code is that "[a]n order is binding as to all who are given notice of the proceeding ...;" § 30.-1-12-06, N.D.C.C. Conway clearly had prior notice of the proceeding. *Cf. Matter of the Estate of Holmes*, 183 Mont. 290, 599 P.2d 344, 6 A.L.R.4th 594 (1979) (no notice of hearing and no notice of entry of order).

On the other hand, in supervised administrations such as these, interim orders may be issued at any time; N.D.C.C. § 30.1-16-05. Editorial Board Comment to this section of the Uniform Probate Code makes it clear that a supervised administration is considered a "single proceeding," requiring notice to commence and to close, and goes on to observe that provision for notice of interim orders was left to be covered by court order or rule, although "[a] demand for notice under section 30.1-13-04 would entitle any interested person to notice of any interim order which might be made in the course of supervised administration;" 6 N.D.C.C. at p. 124. (Compare § 30.1-12-07, N.D.C.C.: "Unless supervised administration as described in chapter 30.1-16 is involved, each proceeding before the court is independent of any other proceeding involving the same estate;...." Also compare § 30.1-16-01, N.D.C.C., on the nature of proceedings in supervised administration.) Conway makes no showing that she filed a demand for notice of entry of orders, as contemplated by § 30.1-13-04, N.D.C.C. In any event, that section goes on to provide: "The validity of an order which is issued or filing which is accepted without compliance with this requirement shall not be affected by the error...."

■■ We observe that, unless contrary to or inconsistent with the Probate Code, "the rules of civil procedure, *including the rules concerning vacation of orders and appellate review*, govern formal proceedings under this title;" § 30.1-02-04, N.D.C.C. (emphasis supplied). *See Matter of Estate of Bieber*, 256 N.W.2d 879 (N.D. 1977).

Rule 77(d), N.D.R.Civ.P., is the rule of civil procedure which deals with notice of entry. It says:

"(d) *Notice of Entry of Judgment Served.* Within 10 days after entry of judgment in an action in which an appearance has been made, notice of such entry, together with a copy of such judgment or a general description of the nature and amount of relief and damages thereby granted, shall be served by the

prevailing party upon the adverse party."

While this rule, unlike its Federal counterpart, seems to require notice of entry of only a judgment, we have defined "judgment" broadly as "a judicial determination on matters submitted to a court for decision which fixes the rights and duties of the parties." *Matter of Estate of Raketti,* 340 N.W.2d 894, 898 (N.D.1983). But, we do not need to decide in this case whether Rule 77(d), N.D.R.Civ.P., requires notice of entry of an interim order in a supervised administration. For this case, it is enough to point out that, because of express provisions of other rules of civil procedure, the effects of failure to give notice of entry of any order are that it extends the time periods, both for relief from an order under Rule 60(b), N.D.R.Civ.P., and for appeal under Rule 4(a), N.D.R.App.P. The time periods of both of these pertinent procedural rules are expressly tied to service of notice of entry of the order or judgment involved.

The record clearly shows that Conway and her then counsel knew by December, 1983, that the order approving the Reconstructed Account was on file. Conway made no effort thereafter to seek relief from that order.

■ It is well established that an interlocutory order may be reviewed on appeal from the final order or judgment in the matter. *Suburban Sales v. District Court of Ramsey,* 290 N.W.2d 247, 251 (N.D. 1980); *United Hospital v. Hagen,* 285 N.W.2d 586 (N.D.1979).

■ We conclude that an interim order in supervised administration, pursuant to a hearing upon notice but where notice of entry is not given, stands unless duly vacated pursuant to the rules of civil procedure. Further, it is subject to appellate review as an interlocutory order, upon appeal from a final order completing settlement of the estate. *See* §§ 30.1–16–05 and

30.1–21–01, N.D.C.C.[1] Thus, on this appeal of the order approving the final account and final distribution, the question is whether there was any error in the interim order approving the Reconstructed Account.

■ But, Conway's only showing is that she lacked notice of the order approving the Reconstructed Account. Although she was represented by counsel at the hearing on the Reconstructed Account, there is no transcript. She took no steps to have a statement of the evidence or proceedings "from the best available means" prepared for this appeal; *see* Rule 10(f), N.D.R.App.P. Nor, did she make an offer of proof when the county judge limited her evidentiary presentation at the final account hearing. Thus, we have neither evidence nor record to consider Conway's complaints about deficiencies in the Reconstructed Account. Therefore, the record on this appeal fails to show any error in the Reconstructed Account.

We have often pointed out that this court will not review claimed errors where there is no record and no offer of proof by which the claim of error can be properly evaluated. *Cargill, Inc. v. Kavanaugh,* 228 N.W.2d 133 (N.D.1975); *Jore v. Saturday Night Club, Inc.,* 227 N.W.2d 889 (N.D. 1975). *See* Rule 103(a), N.D.R.Ev.: "Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, *and* ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." (emphasis supplied).

We have studied the transcript of the hearing on the final account to consider whether the substance of evidence excluded was apparent from the context and to assess whether any substantial right of Conway was affected by the exclusion of evidence at that hearing. The substance of

---

**1.** An interim order in supervised administration may also be reviewed upon direct appeal when there is an express determination that there is no just reason for delay and an express di-

rection for its entry as a final judgment under Rule 54(b), N.D.R.Civ.P.; *Kjorvestad IV,* 345 N.W.2d at 841–842.

evidence excluded is not apparent from the context, and as no offer of proof was made, we find no error. *Halverson v. Pet, Inc.,* 261 N.W.2d 887, 894 (N.D.1978).

For example, Conway asserted in her cross-examination that "there is still grain in the elevator belonging to Guy Kjorvestad," implying that the Reconstructed Account is erroneous for ommitting grain. No specific elevator or warehouse receipts were identified. The Reconstructed Account by First Trust recited that its investigation indicated "grain was distributed to the heirs" prior to the appointment of First Trust and concluded, "[n]o grain on hand belonging to estate." The record shows that on July 13, 1978, (which was after division and distribution of the farm land), the county court ordered that "[t]he grain presently on hand owned by the estates ... shall be distributed in equal shares to the heirs, Eileen Conway and Lorraine Parker. The mechanics of distribution shall be that all grain presently held by the estates shall be delivered to the elevators 50 per cent in the name of each heir, with documents of title being delivered by the respective elevators for each heirs' share." Thus, the insinuations Conway makes about grain on hand are contrary to the record. She may not have availed herself of an existing order of distribution of grain, but if she has not, that is not a responsibility of First Trust nor a deficiency in its Reconstructed Account. Furthermore, Conway did not account for any grain on hand at the time she was removed. This contention plainly lacks substance.

As another example, Conway maintains that the Reconstructed Account fails to show all the coins and items originally inventoried in safe deposit boxes. What First Trust is expected to do about missing items is not spelled out. Conway offered no evidence as to the present whereabouts of any missing items. This lack of proof and her own failure to account demonstrate that her effort to place responsibility on First Trust to further account for a period prior to its appointment is without merit.

■ The county court's order approving the Reconstructed Account determined that neither Parker or Conway "have complied with the Judgment of the District Court, dated June 19, 1980, directing either of [sic] both of them to file a complete report and account as to the assets" of the Kjorvestad estates. Conway does not dispute this. She cannot complain about First Trust's reconstructed accounting when she had the primary duty but ignored it.

■ Absent credible evidence to consider the conjectures Conway makes, we conclude that no error has been shown in the order allowing the Reconstructed Account. We also conclude that there was no error in the county court's discretionary ruling excluding evidence about the Reconstructed Account at the hearing on final account.

## II. COLLECTION OF ASSETS

Conway repeats similar complaints about missing assets by insisting that First Trust had "a duty to fully investigate and determine if any assets were not accounted for, and also negate the possibility that fraud was committed." She also makes various vague claims as to missing funds, ranging from $39,000 to $882,740, but there is no coherent identification of where or when these funds allegedly disappeared. Conway castigates First Trust for not doing enough to collect these assets which she believes are missing. She points out that a successor personal representative "has the same power and duty as the original personal representative to complete the administration and distribution of the estate as expeditiously as possible ...;" N.D.C.C. § 30.1–18–16.

Conway cites *Miller v. First National Bank of Linton,* 62 N.D. 122, 242 N.W. 124 (1932) and *Dolphin v. Peterson,* 63 N.D. 792, 249 N.W. 784 (1933) to the effect that an executor of an estate has a duty to account for all property belonging to the estate. She also cites several cases from other states which imply that successor fiduciaries must account "for the entire period of time in question rather than simply just after their appointment." Those

may be sound general principles, but they have no application to the circumstances of this case.

Our Probate Code specifically provides: *"Except as otherwise ordered by the court,* the successor personal representative has the powers and duties in respect to the continued administration which the former personal representative would have had if his appointment had not been terminated." N.D.C.C. § 30.1–17–13 (emphasis supplied).

First Trust's duties were appropriately otherwise ordered as to responsibility for prior actions of Parker and Conway.

"The duties and powers of a personal representative commence upon his appointment." N.D.C.C. § 30.1–18–01. When appointed, First Trust was expressly "absolved of any and all liability for any actions, transactions, errors or omissions of ... Parker and ... Conway ... prior to the date of its appointment...." This order was congruent with the Probate Code which allows a personal representative to leave property with those who are "presumptively entitled thereto" unless necessary for purposes of administration; N.D.C.C. § 30.1–18–09.

Prior filed accountings and prior distributions to the sisters demonstrate that First Trust was not obliged to collect all assets of the estates. Its responsibility extended only to remaining property of the estates that actually came into its hands. We perceive no basis to impose a fiduciary responsibility on First Trust for assets that were never turned over to it by Conway and Parker.

Conway argues that it is sufficient to impose a greater fiduciary duty on First Trust that it "had been alerted that asserts [sic] may be missing ... and that there may have been wrongdoing on the part of a previous coexecutrix." Mere possibility of misconduct by a prior fiduciary is not alone sufficient reason to hold a successor fiduciary responsible for it.

The record is barren of evidence showing the present whereabouts or custody of any specific missing assets. Conway herself wholly failed to account for any. Under these circumstances, we conclude that First Trust did not violate any fiduciary duty to Conway in collecting assets of the estates.

### III. PERFORMANCE OF DUTIES

Conway insists that First Trust failed to perform its statutory duties because no complete inventory and appraisal in her mother's estate was ever made, and no notice to creditors was ever given in that estate. In doing so, she insists that procedural provisions about inventory, appraisal and notice to creditors of the old Probate Code in effect when her mother died in 1974 should apply.

Our current Probate Code was adopted from the Uniform Probate Code in 1973, effective July 1, 1975. N.D.C.C. § 30.1–35–01(1). It specifically provided:

"b. The title applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this title." N.D.C.C. § 30.1–35–01(2).

The old Probate Code, chapters 30–13, 30–15, and 30–20, was simultaneously repealed. 1973 S.L., ch. 257, § 82.

We find no procedure from the old Probate Code which should be applicable in this decade to First Trust "in the interest of justice." Nor, do we find any procedure in the new Probate Code which is infeasible of application to these estates.

Conway points out that *Kjorvestad I,* 250 N.W.2d at 276, approved application of old Probate Code procedures to those disputes in 1977. In that decision, this Court said: "Application of former law was in the discretion of the trial court and we do not find an abuse of that discretion ...." This prior discretionary application of old procedures did not fix procedural

rights for the eternity of these estates. It is axiomatic that procedural modes, as distinguished from substantive rights, are not vested and are subject to repeal, modification or change. *Kessler v. Thompson*, 75 N.W.2d 172, 178 (N.D.1956).

 The lack of formal inventory and appraisement in this disrupted estate is not significant in view of the extensive estate tax filings and litigation, which First Trust concluded, and in view of the prior major distributions in these estates before First Trust was appointed to wind them up. Nothing supports imposing a greater burden upon First Trust than upon Conway herself. Again, her own failure to cause inventory and appraisal while she was responsible, as well as her own failure to account to her successor, demonstrates the lack of merit in her claim that First Trust failed to perform statutory duties.

 As to Conway's complaint that notice to creditors had not been given in her mother's estate, we observe that this saved needless expense to the estate since all creditors' claims against the estate were long since barred by the lapse of time in this estate. N.D.C.C. § 30.1–19–03.

We hold that First Trust satisfactorily performed its duties of administering and distributing the remaining balance of Mrs. Kjorvestad's estate "as expeditiously as possible."

## IV. ADDITIONAL COMPENSATION

Conway argues that it was "clearly erroneous" to award compensation to First Trust because total fees paid to personal representatives exceeded amounts authorized by the old Probate Code and because First Trust failed "to perform its statutory duties." Our consideration of these same issues earlier in this opinion dispose of these contentions.

Conway complains that administration costs have been excessive. There is no recognition by her of her own obsessive role in this. We observe that, in addition to the direct costs to these estates of her litigation, she was reimbursed a total of $41,054.25 in expenses after her removal, when her sister waived any such claim. Thus, any excessiveness in administration costs cannot be attributed to First Trust.

First Trust insists that it has done "our best in a very difficult situation," and suggests that "some bonus ... in the nature of 'combat' pay may be in order." Pointing to Conway's repeated litigation over payment of fees and expenses in past proceedings in these estates, *see Kjorvestad I, II and IV*, First Trust correctly observes that "Conway has no obvious objection to litigation, except for payment of its cost." Indeed, Mrs. Conway has paid no heed to this Court's prior warnings about dissipating funds of the estates through rancorous litigation; *see Kjorvestad II*, 287 N.W.2d at 468 and *Kjorvestad III*, 304 N.W.2d at 87.

Without cooperation from Conway, First Trust collected remaining assets and funds (some of which had been in non-interest bearing status for many months), completed and filed amended estate tax returns, prosecuted and resolved complex estate tax litigation in the federal courts, filed fiduciary income tax returns, prepared the Reconstructed Account, and prepared and submitted its final account and petition for distribution. It appears that First Trust diligently sought to dispatch its duty to complete the administration of both estates as "expeditiously as possible" under the circumstances.

 The Probate Code authorizes reasonable compensation to a personal representative and to those properly employed to assist in administration of any estate, including reasonable attorney's fees to defend or prosecute any proceeding in good faith. N.D.C.C. §§ 30.1–18–19, 30.1–18–21 and 30.1–18–20. The county court approved the compensation as reasonable. Under N.D.R.Civ.P., Rule 52(a), we are required to affirm the findings of the county court on compensation unless they are "clearly erroneous." No evidence was submitted by Conway to dispute the services itemized or the hourly rates charged. We conclude that the county court's approval of compensation was not erroneous.

## V. COST OF THIS APPEAL

 First Trust suggests that we consider assessing its costs and attorney's fees on this appeal against Conway's share of the estates as an appropriate method of dealing with her unrestrained and unsubstantiated accusations. We agree.

We have fully examined the record and carefully considered her issues to satisfy ourselves that there was no serious symptom in her legal hypochondria. We have found none. We conclude that her sweeping accusations are unreasonable and that her claims of misconduct by First Trust are entirely unsubstantiated.

This public airing of her private obsession ought to be at her personal expense. As the Nebraska Supreme Court recently observed: "It seems to us that the probate code should not be construed so as to permit one heir or devisee to finance his or her lawsuit against another heir or devisee out of the funds of the estate, ..."; *In Re Estate of Kesting*, 220 Neb. 524, 371 N.W.2d 107, 109 (1985).

Accordingly, we exercise our powers under Rule 38, N.D.R.App.P., and direct an award accordingly. We order that First Trust be paid its reasonable compensation, attorney's fees and costs on this appeal out of Conway's share of the estate only, rather than from the total estate as has been done heretofore.

## VI. CONCLUSION

We hold that there is no evidence that the Reconstructed Account was erroneous and we hold that the county judge did not err in excluding further evidence concerning that prior period at the later hearing on the final account. We also hold that First Trust satisfactorily performed its fiduciary duties to collect assets and account for them.

We affirm the Order Approving the Reconstructed Account, the Order Approving the Final Account and Directing Distribution, and the county court's order approving compensation and expenses to First Trust and its attorney. We direct that

First Trust be paid its reasonable compensation, attorney's fees and costs on this appeal, as determined and approved by the county court, from the remaining share of the estates distributed to Conway.

ERICKSTAD, C.J., VANDE WALLE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.