443 N.W.2d 624 (1989)
In the Interest of A.O.
A.E. KADRMAS, M.D., Petitioner and Appellee,
v.
A.O., Respondent and Appellant.
Civ. No. 890169.
Supreme Court of North Dakota.
July 18, 1989.
John J. Fox (argued), Asst. Atty. Gen., Jamestown, for petitioner and appellee.
Weiss, Wright & Paulson, Jamestown, for respondent and appellant; argued by Thomas E. Merrick, Jamestown.
MESCHKE, Justice.
A.O. appealed an order of the Stutsman County Court committing him to the North Dakota State Hospital for continuing mental health treatment. We conclude that the appeal was timely and we affirm.
The Cass County Court committed A.O. to the State Hospital for 90 days of involuntary treatment. Before that 90 days ended, the State Hospital petitioned the Stutsman County Court for an order for continuing treatment. After hearing, the trial court determined that A.O. was mentally ill, that there was a substantial likelihood of harm to others, and that alternative treatment was not appropriate. On April 26, 1989, the trial court ordered A.O. hospitalized for continuing treatment.
A.O. appealed. The notice of appeal, dated May 25, 1989, was not filed until May 30, 1989. The State Hospital moved to dismiss the appeal as untimely because the notice of appeal was filed more than 30 days after entry of the order. A.O. responded that the order was served on him by mail so that he had three additional days under NDRCivP 6(e) and NDRAppP 26(c). Since May 29, 1989 was a holiday, A.O. claimed that his filing on May 30 was timely. NDRCivP 6(a). We deferred consideration of the motion to dismiss until oral argument on the statutorily expedited appeal.
The State Hospital argued that NDRCivP 6(e) and NDRAppP 26(c) were inapplicable because they extend time after service of a paper, not after filing of a paper. The usual time for a civil appeal is "within 60 days of the date of the service of notice of entry of the judgment or order *625 appealed from." (Our emphasis). NDRAppP 4(a). The time for a mental health appeal is different: "The notice of appeal must be filed within thirty days after the order has been entered." (Our emphasis). NDCC 25-03.1-29. The special appellate rule for mental health appeals repeats this direction: "An expedited appeal from an order pursuant to Section 25-03.1-29, ... may be taken by filing a notice of appeal with the clerk of the trial court within 30 days after entry of the order." (Our emphasis). NDRAppP 2.1(a). Rules authorizing additional time for action after service of a paper by mail do not extend the time for filing a mental health appeal.
At oral argument, counsel for A.O. conceded that he had mistakenly assumed that he had the extra time for filing the notice of appeal, although he had timely prepared it. Alternatively, he argued that the time for appeal was extended by another circumstance. NDCC 25-03.1-29 directs: "Upon entry of an appealable [mental health] order, the court shall notify the respondent of the right of appeal...." Counsel for A.O. argued by analogy to criminal rules that, without that notice, the time for appeal did not begin upon filing of the order. As A.O.'s trial lawyer, appellate counsel acknowledged that he knew about the order entered and about A.O.'s right to appeal. Nevertheless, counsel for A.O. argued that the time for appeal did not begin until the trial court formally advised A.O. of his right to appeal. We agree that the record of A.O.'s commitment does not show that the trial court notified A.O. of his right to appeal.
To support his argument, counsel for A.O. cited decisions in criminal cases, State v. Carmody, 243 N.W.2d 348 (N.D.1976) and State v. Bohn, 406 N.W.2d 677 (N.D.1987). In Carmody, this court ruled that the failure of a sentencing court to advise a criminal defendant of his right to appeal could be questioned in a post-conviction application and that the defendant's failure to appeal had not waived his right to challenge his conviction. A remand for resentencing and reinstatement of the right to appeal was directed. This court relied upon the explanatory note to NDRCrimP 37 which said: "The provision in Rule 32 which requires that the defendant be advised of his right to appeal * * * is clearly a necessary part of a valid sentence and until it is given, the 10-day period for taking an appeal cannot begin to run because there is no valid sentence in existence." 243 N.W.2d, at 350.
Similarly, in Bohn, supra, the trial court's failure to inform a criminal defendant about his right to appeal was an alternative basis for our conclusion that a delayed written notice of appeal was timely. Again, we relied on the explanation to NDRCrimP 37 that until a criminal defendant is advised of his right to appeal, his time for taking an appeal cannot begin. 406 N.W.2d, at 679. See also, Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969). In criminal cases, the trial court's failure to advise a convicted defendant of his right to appeal effectively extends the time to seek appellate review.
In the civil context, a failure to give a required notice extends the time for appeal. Matter of Estate of Kjorvestad, 375 N.W.2d 160, 166 (N.D.1985); Matter of Estate of Erickson, 368 N.W.2d 525, 528 (N.D.1985); In the Matter of Alf J. Bo, 365 N.W.2d 847, 850 (N.D.1985). Compare Morley v. Morley, 440 N.W.2d 493 (1989) and Lang v. Bank of North Dakota, 377 N.W.2d 575 (N.D.1985), where the required knowledge was clearly shown on the record, although the notice had not been given.
Neither the criminal analogy nor the civil analogy is complete, but together they point the way. Lack of a required notice about appeal can be remedied by extending the time for appeal. The right to appeal is an important aspect of our mental health procedures. We conclude that the failure to give the statutorily required notice of the right to appeal extends the time for appeal of a mental health commitment order. Accordingly, we conclude that A.O.'s appeal was timely.
*626 A.O. argued on appeal that his one isolated, minor and remote incident of physical conduct was not clear and convincing proof that he required continuing treatment. The trial court determined:
"5. That as a result of testing and interviewing the respondent, the doctor reached the opinion that the respondent suffers from a mental illness described as schizophreniaundifferentiated typechronic.
"6. The respondent is withdrawn. He does not socialize with others.
"7. That the respondent struck another patient at the Hospital because he felt that the other patient was invading his space.
"8. That the res[p]ondent has to be encouraged to clean his clothes and his body.
"9. That the respondent has been admitted to the State Hospital on a prior occasion.
"10. That Dr. Cabuso was of the opinion that the respondent needs to be medicated, but refuses to take medication."
The trial court ruled that A.O. suffered from a mental disorder and that there was "a substantial likelihood of harm to others as demonstrated by [his] past actions" as required by NDCC 25-03.1-02(11)(b). We conclude that there was clear and convincing evidence for these findings and that they were not clearly erroneous. See In the Interest of Gust, 392 N.W.2d 824 (N.D.1986). We agree with the trial court that A.O. required continuing treatment.
Dr. Cabuso, the treating psychiatrist, testified that A.O.'s assault on another patient, described in finding 7, was "unprovoked" and committed against a very "frail" mental patient. When A.O. believed that someone "invaded his space," he reacted with violence. It required several staff members to place A.O. in seclusion. At that time, Dr. Cabuso deemed it necessary to medicate A.O. with a neuroleptic drug. In the context, it is evident that A.O. was a withdrawn, seriously ill individual who, without outward warning, had resorted to violence based on perceptions distorted by his illness. Even though singular, A.O.'s physical conduct was not as minor or remote as A.O. believes.
We affirm.
ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.