In the Matter of the ESTATE OF John J. FLAHERTY a/k/a John Flaherty, Deceased.

John H. FLAHERTY, Jr., Petitioner and Appellant,

v.

Norine FELDNER, Personal Representative of the Estate of John J. Flaherty, Deceased, Respondent and Appellee.

Civ. No. 910268.

Supreme Court of North Dakota.

April 24, 1992.

Robert J. Slorby (argued), Eaton, Van de Streek & Ward, Minot, for petitioner and appellant.

Robert J. Hovland (argued) and Orlin W. Backes (appearance), McGee, Hankla, Backes & Wheeler, Ltd., Minot, and Richard L. Schnell (no appearance), Mandan, for respondent and appellee.

ERICKSTAD, Chief Justice.

John H. Flaherty, Jr., successor personal representative of the estate of John J. Flaherty, appeals from a county court order that approved the final report and account of Norine Feldner, the former personal representative of the estate; approved payment of certain attorney fees and personal representative fees from estate assets; and discharged Feldner as personal representative. We affirm.

John J. Flaherty died on March 17, 1986. John J. executed four wills during his life, each denying that he had children. His last will, executed in 1985, provided that four charities would receive a total of $10,000 and that his sister, Violet Flaherty, would receive $1,000. The will further provided that nine nieces and nephews would receive one-half of the balance of the estate, and that his sister, Feldner, would receive the other one-half of the balance. The will also appointed Feldner to serve as personal representative of the estate.

John H. Flaherty, Jr., challenged the wills, claiming that he was the son of John J. and that John J. was laboring under an insane delusion and thus lacked the testamentary capacity to execute the wills. The trial court granted summary judgment dismissing the petition to set aside the wills. John H. appealed to this court. In *Flaherty v. Feldner*, 419 N.W.2d 908 (N.D.1988), we reversed the summary judgment and remanded for further proceedings.

On remand, Feldner again moved for summary judgment, but the motion was denied by the trial court. After a four-day trial, the jury determined that John H. was John J.'s son and that John J. was laboring under an insane delusion when he executed the four wills. The trial court entered a judgment declaring that all four wills were invalid and that John H. was John J.'s son and the sole heir to his father's estate. Feldner appealed from that judgment, and in *Matter of Estate of Flaherty*, 446 N.W.2d 760 (N.D.1989), we affirmed, with two Justices dissenting.

Feldner then filed a report and account of all assets received and expended by her while serving as personal representative of the estate. The total value of the estate assets was approximately $232,236. Following a hearing, the trial court approved payment of attorney fees and costs from estate assets to the McGee, Hankla, Backes & Wheeler, P.C., law firm [hereinafter McGee law firm] in the total amount of approximately $36,262 for representing Feldner as personal representative of the estate. The court also approved total payment from estate assets of approximately $9,860 in attorney fees and costs to Richard L. Schnell for his work in the will litigation. The court also allowed Feldner total payment of $11,500 in personal representative fees from the estate and discharged her as personal representative.

The trial court entered a Rule 54(b), N.D.R.Civ.P., certification, and John H. [hereinafter Flaherty] has appealed. Flaherty challenges the propriety and the amount of attorney fees and personal representative fees awarded by the trial court from the estate.

## ATTORNEY FEES

Flaherty asserts that the trial court erred in allowing Feldner the attorney fees incurred in her unsuccessful defense of the will contest.

A personal representative is entitled to compensation from the estate for reasonable attorney fees incurred in defending or prosecuting any proceeding in good faith. *See Matter of Estate of O'Connell,* 476 N.W.2d 8, 11 (N.D.1991); *Matter of Estate of Kjorvestad,* 375 N.W.2d 160, 170 (N.D.1985). The personal representative may be reimbursed for these expenses, or payment may be made directly to the attorney out of the estate. *First Trust Co. of North Dakota v. Conway,* 345 N.W.2d 838, 843 (N.D.1984). Section 30.1–18–20 [U.P.C. § 3–720], N.D.C.C., provides:

"*30.1–18–20 (3–720). Expenses in estate litigation.*—If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred."

Generally, a personal representative "has the duty, as well as the right, to defend the will by all fair means, and with his best efforts, at least where he has reasonable ground to believe the will is valid." 95 C.J.S. *Wills* § 331, at p. 185–186 (1957) [Footnotes omitted]. *See also* §§ 30.1–18–03(1) and (2) [U.P.C. § 3–703], and 30.1–18–15(22) [U.P.C. § 3–715], N.D.C.C. This duty applies regardless of whether the personal representative is also a beneficiary under the will. *See, e.g., Matter of Estate of Unger,* 54 Or.App. 713, 636 P.2d 436, 437 (1981). Furthermore, § 30.1–18–20 specifically provides that ultimate success in the legal proceedings is not a prerequisite to the allowance of reasonable attorney fees. *See Matter of Estates of Kjorvestad,* 287 N.W.2d 465, 468 (N.D. 1980); *Estate of Brideau,* 458 A.2d 745, 748 (Me.1983); *In re Estate of Reimer,* 229 Neb. 406, 427 N.W.2d 293, 295 (1988).

In construing § 30.1–18–20, we have said that "it must appear that the personal representative acted in good faith, that his conduct was free from fraud, and that he benefited the estate before attorney fees and costs may be awarded by the court." *Matter of Estate of Honerud,* 326 N.W.2d 95, 97 (N.D.1982). A "benefit" to an estate certainly includes services that bring about an enhancement in value or an increase in the assets of the estate. *See, e.g., Matter of Estate of Ambers,* 477 N.W.2d 218, 224 (N.D.1991). However, we believe that a "benefit" to the estate is not to be measured solely in monetary terms, but can also include a personal representative's good faith attempts to effectuate the testamentary intention set forth in a facially valid will. *See, e.g., In re Estate of Lewis,* 442 So.2d 290, 292 (Fla.Ct.App. 1983). As the court reasoned in *In re Pelgram's Estate,* 146 Misc. 750, 262 N.Y.S. 848, 854 (1933):

"To be beneficial, it need not be shown that net tangible monetary advantage was realized or that a money loss was avoided. The administration of trust property does not permit so simplified a test of 'benefit.' The word applies to every aspect of administration which sound judgment would approve. If in the carrying on of such an administration legal services are required either in defense or in attack, the fiduciary may contract for or may pay and receive allowance for reasonable fees."

Statutes providing for attorney fees to be paid out of the estate to a successful or unsuccessful personal representative who engages in good faith proceedings recognize that an estate as an entity is benefited when genuine controversies as to the validity or construction of a will are litigated and finally determined. *See Matter of Estate of Robinson,* 236 Kan. 431, 690 P.2d 1383, 1387 (1984). The purpose and public policy underlying these statutes is to allow the personal representative, as a fiduciary acting on behalf of persons interested in an estate, to in good faith pursue appropriate legal proceedings without unfairly compelling the representative to risk personal financial loss by underwriting the expenses of those proceedings. *Cf. Dunnuck v. Mosser,* 546 N.E.2d 1291, 1292 (Ind.Ct.App.1989). We review the trial court's allowance of attorney fees in this case with these principles in mind.

The trial court essentially determined that Feldner's defense of the will was conducted in good faith and that her conduct was free from fraud. The trial court found "that the claim that ... Feldner mismanaged the estate during her administration is not well founded. Her actions appeared to be those of one who was intent on handling the estate in the best manner she knew how." The court further found that "[t]he fact that the verdict was unfavorable to the personal representative and that the decision of the jury and the Court was upheld by the Supreme Court should not be used as a factor in determining that the personal representative or her attorneys acted inappropriately."

We conclude that the trial court did not err in allowing Feldner attorney fees for defending the will contest. The will was facially valid and the will contest was based on a rather novel theory. Flaherty claimed that his father's mother was insane, that she forced her insane delusion on his father, and that she caused his father to suffer from this delusion for 20 years after the mother's death. Unlike the situation in *Matter of Estate of Honerud, supra,* this is not a case in which the named personal representative and primary beneficiary in a contested will was found by the jury to have exercised undue influence over the testator in executing the will. Moreover, Feldner's subsequent appeal of the jury verdict cannot be considered frivolous. Indeed, two Justices of this court agreed with Feldner and would have reversed the jury verdict. *See Matter of Estate of Flaherty, supra,* 446 N.W.2d at 768.

We likewise reject Flaherty's contention that the purpose of Feldner's defense to the will contest "was essentially to defend Feldner's own substantial personal interest as an heir under the wills and to exclude Flaherty from receiving anything from his father's estate." There were fourteen beneficiaries other than Feldner who would have received proceeds from the estate if the 1985 will had been upheld. Although Feldner would have received a sizeable share of the estate, the will appointed her personal representative to act on behalf of all beneficiaries. The record establishes that the litigation was handled on behalf of the estate and that the attorney fees were incurred in pursuit of Feldner's fiduciary duties as personal representative of the estate. Nothing in this record remotely suggests anything other than a good faith attempt on the part of Feldner, as personal representative, to benefit the estate as an entity by effectuating the testamentary intentions set forth in the 1985 will.

Flaherty also asserts that the amount of attorney fees awarded in this case is unreasonable. It is well established that a trial court is considered an expert in determining the value of reasonable attorney fees and we have consistently taken the "view that trial courts generally, and particularly county courts in probate matters, are qualified to determine reasonable legal fees for services rendered to an estate." *Matter of Estate of Ridl,* 455 N.W.2d 188, 194 (N.D.1990). We will not reverse a trial court's determination on attorney fees absent a clear abuse of discretion. *Matter of Estate of Vertin,* 381 N.W.2d 199, 200 (N.D.1986). A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *Id.*

In *Hughes v. North Dakota Crime Victims Reparations Board,* 246 N.W.2d 774, 777 (N.D.1976), we adopted the following guidelines for determining reasonable attorney fees:

"(1) time and labor required (distinguishing between legal work in the strict sense, and investigation, clerical work, and compilation of facts and statistics); (2) the novelty and difficulty of the questions (he should not be penalized for accepting a challenge which may result in making new law); (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attor-

ney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

Flaherty's major objection is that the estate was improperly ordered to pay for "needless duplicate representation." Attorney Richard Schnell was hired by Feldner to act as the trial attorney for the estate during the will contest. Because a member of the McGee law firm drafted the wills that were the subject of the lawsuit, and because it appeared that he would be required to testify at trial about his drafting of the wills, the law firm believed ethical considerations required that independent counsel act as the trial attorney. *See* Rule 3.7 of the North Dakota Rules of Professional Conduct; *Thompson v. Goetz*, 455 N.W.2d 580, 587–588 (N.D.1990). After Schnell was substituted as the trial attorney, another member of the McGee law firm attended the trial on behalf of the estate.

■■■ Although employment of multiple attorneys by a personal representative is viewed with disfavor, whether additional legal counsel may properly be employed at the expense of the estate "depends ultimately on the facts and circumstances of the individual case." *Conway v. Parker*, 250 N.W.2d 266, 273 (N.D.1977). The trial court determined that employment of additional counsel was proper under the circumstances of this case. According to the court, "[i]t was critical to their case that Richard McGee testify as he was the attorney who drafted the Last Wills and Testaments of John J. Flaherty. His testimony was critical to the case put forth by the estate at that point." The trial court further reasoned:

"A law firm cannot, at time for trial, merely give a file to another attorney and walk away from it. The trial preparation can be best done by the law firm that is familiar with the case from start to finish, which is where the McGee Law Firm was at in this matter. Mr. Schnell had to prepare for trial and the McGee Firm had to prepare for trial. Their joint efforts were for and done on behalf of

their client, Noreen Feldner, Personal Representative of the Estate...."

Feldner, who was also a beneficiary of the estate under the contested will, approved the hiring of additional counsel. Moreover, Flaherty did not point out to the trial court or to this court the amount of hours or services that he believed were duplicated. Flaherty has failed to convince us that the trial court abused its discretion in allowing attorney fees for both Schnell and the McGee law firm in this case.

■■■ We are also unpersuaded, as was the trial court, by Flaherty's suggestion that only "the normal probate attorney fees" should be approved in this case. We agree that the amount of approved attorney fees is substantial, "but that fact, standing alone, does not make them unreasonable." *Matter of Estates of Kjorvestad, supra*, 287 N.W.2d at 469. This was not a "normal" probate case. It involved a unique will contest, two summary judgment motions, a four-day jury trial with expert witnesses, and two appeals to this court. The litigation was complex, substantial, and time consuming. The attorneys provided the trial court with detailed statements of the time spent on estate matters. The trial court examined the statements and disapproved some fees which it concluded were attributable to "Feldner's personal needs and not those of the estate." The court found that the remaining attorney fees were "reasonable" in this case. We cannot say that the trial court abused its discretion in approving the payment of these attorney fees from estate assets.

## PERSONAL REPRESENTATIVE FEES

■■■ A personal representative is entitled to reasonable compensation for services rendered. *Matter of Estate of O'Connell, supra*, 476 N.W.2d at 11; *Matter of Estate of Ridl, supra*, 455 N.W.2d at 192; Section 30.1–18–19 [U.P.C. § 3–719], N.D.C.C. Flaherty asserts that the award of $11,500 for Feldner's personal representative fees was unreasonable and excessive.

The review of fees paid or taken by a personal representative is left to the sound discretion of the trial court. *See Matter of Estate of Stone,* 236 Mont. 1, 768 P.2d 334, 336 (1989); *Matter of Estate of Baird,* 137 Mich.App. 634, 357 N.W.2d 912, 913 (1984). We will not overturn that decision absent a showing of abuse of discretion, and the court's underlying findings of fact will be upheld unless clearly erroneous. *See Matter of Estate of Kjorvestad, supra,* 375 N.W.2d at 170.

Although Feldner's documentation of services rendered to the estate is somewhat lacking in detail, we believe it was sufficient for the trial court to rule on the reasonableness of the requested fees when considered along with her hearing testimony. The record shows that she served for more than three and one-half years as personal representative of an estate valued at approximately one-quarter of a million dollars. During that time, Feldner spent a total of seven days at court appearances and prepared for, testified at, and participated in a four-day trial. She participated in 28 conferences with attorneys, had 20 telephone conversations with attorneys, and handled and reviewed approximately 80 items of correspondence relating to the estate. Feldner also spent three days preparing for and attending an auction sale of estate assets. She also handled the sale of the decedent's house. She lived 20 miles from Minot which caused further time and expense to attend to her duties as personal representative.

The trial court determined that Feldner's fees of $11,500 for administration of the estate were reasonable. In view of the nature of this case, the unusual tasks the personal representative was required to perform because of the will contest, and the amount of work required to manage the estate, we cannot say that the trial court abused its discretion in approving the amount of Feldner's personal representative fees.

We have considered the other arguments raised by Flaherty and deem them to be without merit. Accordingly, the order is affirmed.

VANDE WALLE, LEVINE and MESCHKE, JJ., and KIRK SMITH, District Judge, concur.

KIRK SMITH, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of GIERKE, J.

JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate in this decision.